# RYAN v. UNITED STATES.*

CRIMINAL LAW; INTOXICATION; EVIDENCE; LARCENY; REVERSIBLE ERROR.

1. That voluntary intoxication neither excuses or palliates crime is a

*Criminal Law—Intoxication as a Defense.—The authorities dealing with
the subject of intoxication as a defense to a criminal charge are fully

settled principle in this jurisdiction. (Following *Harris* v. *United States,* 8 App. D. C. 20, 36 L. R. A. 465; *Lanckton* v. *United States,* 18 App. D. C. 348.)

2. A mere intentional trespass to another's goods does not constitute larceny, but the specific intent to steal must be added. So that if one, without the intent to steal, becomes too drunk to intend it, and then, in this condition, takes another's goods, and relinquishes them before the intent can arise, or returns them the instant his restored mind has cognizance of the possession of them, there is no larceny. And this embraces those cases where the property may have been recovered, or the taker apprehended, before this return to consciousness with reasonable opportunity to act upon reflection.

3. An offer by one accused of larceny to show that he was merely drunk at the time of the commission of the alleged offense, without offering to show further that he was so drunk as not to be able to entertain an intent to steal, is properly refused.

4. Where the accused's own evidence in a prosecution for larceny of a trunk showed that he procured railroad checks in this city for two trunks, not his own, and had them sent to a city in Tennessee, where he had one of them rechecked to a place in Texas, where he reopened it and endeavored to sell some of its contents, an offer by him to show that when he checked the trunks in this city he was so drunk he did not know anything was *held* to have been properly refused, it being immaterial whether he was drunk or not at the time of receiving the checks for the trunks here; and that the facts supplied the intent necessary to complete the offense of larceny in this District, instead of transferring the place of its commission to the State of Texas.

5. While evidence tending to show that an accused person has committed, or attempted to commit, another crime wholly independent of that with which he is charged, is inadmissible, evidence of other criminal acts is admissible, where they are so blended or connected with the one charged that the proof of one incidentally involves the other. It is often relevant, too, in the establishment of identity, guilty knowledge, intent and motive. (Following *Fearson* v. *United States,* 10 App. D. C. 536; *Funk* v. *United States,* 16 App. D. C. 478.)

6. In a prosecution for larceny of a trunk, evidence offered by the prose-

---

presented and discussed in an editorial note to *Harris* v. *United States,* 36 L. R. A. 465.

*Evidence of Other Crimes Committed by Accused.*—In an exhaustive editorial note to *People* v. *Molineux,* 62 L. R. A. 193, the authorities dealing with the admissibility of evidence of other criminal acts committed by accused are fully presented and discussed.

cution, tending to show that the accused had in his possession a forged letter containing false statements, by means of which, on the day he committed the alleged offense of larceny, he sought to obtain assistance from a clergyman, is inadmissible, as it has no connection with the separate and distinct offense charged in the indictment, but is apart from and collateral to the issue to be tried.

7. In a prosecution for larceny, the erroneous admission of evidence of an independent offense tending to show the depraved character of the accused is not reversible error, where the accused, while he made no formal confession that he was guilty of the crime for which he was indicted, in testifying in his own behalf related facts which established his guilt.

No. 1548. Submitted May 23, 1905. Decided June 13, 1905.

HEARING on an appeal by the accused from a judgment of the Supreme Court of the District of Columbia in which he was found guilty by the verdict of a jury in a trial for grand larceny.                                                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment and sentence under an indictment for grand larceny. The indictment charged the felonious taking and conversion of a trunk and certain wearing apparel and jewelry of the value of about $1,000, the property of one Lillian B. Anthony, on December 24, 1904.

The evidence on behalf of the government tended to show the following facts: That defendant, on said day, applied to the proper officer of the Southern Railway Company, in the city of Washington, for a pass to the city of Memphis, representing himself to have been a former locomotive engineer on one of the lines of said railway. That he gave his name as John Riley and received the said pass in that name. That he was about the station several times during the day between noon and 6 o'clock P. M. That he presented his pass and obtained a check thereon for two trunks to Memphis. He then said that he was the oldest engineer on the road. That later he requested checks for two other trunks, stating that the same belonged to his wife

who was sick and in the waiting room. That in fact he had no wife in the District of Columbia. That he presented no checks or receipts for the trunks, and none were then attached thereto. That he was questioned closely and identified the trunks to the satisfaction of the baggage checker. That checks were given him to Memphis for the said trunks. That one of these was the trunk identified by Mrs Anthony as her property.

On cross-examination the witness said that defendant was about the station several hours posing as an employee of the railway company; that he did not notice his actions particularly, and did not form an opinion that he was drunk. He was then asked if he had not recently told certain persons, at a named time and place, that the defendant was drunk when he obtained the checks. Upon objection by the government, the witness was not permitted to answer.

Another witness for the government said that he was in charge of the station baggage room at the Pennsylvania station, and saw defendant around the room several times on that afternoon; that defendant was boisterous and profane, and he ordered him to leave; that he ejected him because of his conduct when he refused to go; that defendant returned later; was boisterous and used indecent language, whereupon witness went to the corner and "reported facts" to a police officer who removed defendant from the room. On cross-examination he was asked what "facts" he reported to the officer, but, the government objecting, answer was not permitted. Then he was asked to state the condition of defendant with respect to his sobriety as indicated by his actions and language. Witness replied that he formed the opinion that defendant was a nuisance, and that while he had been drinking did not think him drunk. He was then asked if he had not recently told certain persons, at a time and place, designated, that defendant was very drunk, and further, if he had not said that defendant was boisterous and using indecent language "in a way that none but a drunken man would." He was further asked if he had not said, at the time that Mrs. Anthony complained of the loss of her trunk, that he had checked the trunk because he thought he was doing a favor

for an old railroad man who was "so drunk that he did not know anything." Objection was made to the witness answering each of these questions, and the court, in sustaining the same, said: "What difference does it make if he was drunk?" Two officers of the police force of the city of Dallas, Texas, and a member of the detective force of the city of Washington gave evidence tending to show that defendant had the trunk, identified as belonging to Mrs. Anthony, in Dallas, Texas, where he was arrested; that he tried to sell the seal-skin coat described in the indictment; that he claimed that the said trunk and its contents were the property of his wife, and that he had been instructed by her to deliver certain articles to her sister, who resided in Dallas, but that, failing to locate the said sister, he had tried to sell some of the said articles. George A. Anthony, the husband of the owner of the trunk, identified the same as produced by the witnesses aforesaid, and testified that the same and the articles therein described in the indictment were the property of Lillian B. Anthony.

Defendant introduced as a witness one Ball, who was an employee in the baggage room at the time named, and asked him: "What was defendant's condition at that time, drunk or sober?" Witness was not permitted to answer, the court again stating that "it makes no difference if he was drunk."

Defendant, on his own behalf, testified that he came to Washington from Portsmouth, Virginia, December 24, 1904; that nearly thirty-five years ago he had been employed on the Southern Railway as machinist and engineer; that he applied for a pass, to W. T. Lawton in the railway offices, in the name of John Ryan; that Lawton called to a clerk to issue the same; that it was written, signed by Lawton, and delivered to the defendant; that when about to leave the office he noticed that the name written was Riley; that he mentioned the error to Lawton, who said he did not want the trouble of canceling the pass, and told him to sign the name on the back as written; that while in the office he fell in with a number of engineers who were getting passes for the Christmas holidays, and, walking down Pennsylvania avenue, they stopped at several saloons; that he first drank

beer but changed to whisky; that, not finding his trunks at the station, he went across the street and stopped in a saloon; that when his trunks arrived he treated the drayman and his assistant; that he continued to drink and missed his overcoat; that he went to the baggage room to look for it and remembered having been put out; that he remembered having trunks checked, but not the number; that he did not know what train he left on, but some of his companions put him on board; that he had not drunk before for nearly twenty years; that he did not remember what became of his overcoat; had never found it; that he did not know how many checks he had and paid no attention to them until he got to Memphis; that he was very sick and stopped at Greensborough and Salisbury, and spent a day and night in Memphis, arriving in Dallas on Friday before New Years; that he did not see the trunks in Memphis but exchanged checks there; that on arrival at Dallas he gave his checks to a drayman, and on the next day found four trunks in his room at the hotel; that he found that one of his keys would open one of the strange trunks; that he did not know the owner, and, believing he was far away from the owner, gave no consideration to the matter of returning the trunk; that he was "broke," having but $2 left, and was trying to get to Los Angeles where he had been promised work; that he had not then succeeded in obtaining railway passes, and decided to try and dispose of some of the articles in the trunk to raise money to go west; that he admits he did wrong, but did not sell anything, and only made an offer to one person; that on Tuesday morning he obtained a pass to El Paso, and, being then offered $30 for the seal-skin coat, said he would not take $1,000 for it now; that he was arrested on the same day; "that he lied to the officers about the trunk and his actions in Dallas."

On cross-examination he said that he did not know what the four checks were for; that he paid $1 to have his baggage transferred in Memphis, exchanging checks for checks. The bill of exceptions records that he contradicted himself several times as regards putting the trunks in the baggage car at Washington, and as to several occurrences on the way. He said that he did

not remember when he last saw his wife, and that she had not been with him in Washington. The defendant was asked if he had not called upon Dr. Stafford, rector of St. Patrick's Church, Washington, on the morning of December 24, 1904. Objection being overruled, he said he did not remember having called upon Dr. Stafford, and said he had not been to any church that morning. He was then asked if he did not present to Dr. Stafford a letter purporting to have been signed by Archbishop Ryan, stating in effect that defendant was his brother, and asking financial assistance for him. Objection having been made and again overruled, he said that he did not remember going to see Dr. Stafford, "but, in answer to further questions, admitted having a letter such as described, and admitted that the same was not genuine, and that he was not a relative of Archbishop Ryan." To each and every one of the questions on this point the defendant objected on the ground that "the matter was absolutely irrelevant and had no bearing upon the case, was immaterial to the issue, and could only tend to prejudice the defendant."

Exceptions were duly reserved in all instances where objections had been made and overruled.

In rebuttal, the government introduced W. T. Lawson, who testified that he issued the pass to the defendant in the name of John Riley, and denied that defendant had called his attention to any error in the name. On behalf of the defendant two special requests for instructions to the jury were denied. These were, substantially, that, if the jury have a reasonable doubt as to whether defendant was too drunk when he checked the trunk to entertain a specific intent to steal the same, they must find him not guilty.

*Mr. Joseph C. Sheehy*, *Mr. Frank J. Hogan*, and *Mr. Philip A. Grau* for the appellant.

*Mr. Morgan H. Beach*, United States Attorney for the District of Columbia, and *Mr. Charles H. Turner*, and *Mr. Charles A. Keigwin*, Assistants, for the United States.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The several assignments of error raising the question of the effect of the appellant's probable intoxication at the time of the unlawful taking may be considered together.

That voluntary intoxication neither excuses nor palliates crime is a settled principle in this jurisdiction. *Harris* v. *United States,* 8 App. D. C. 20, 26, 36 L. R. A. 465; *Lanckton* v. *United States,* 18 App. D. C. 348, 370. In each of those cases the indictment was for murder. In such cases specific intent is not always necessary as in some other offenses; it is usually inferred from the act itself. But, where murder has, by statute, been made to consist of several degrees, the precise state of the mind of the accused may become of special importance. In such cases it may sometimes be a material question for the consideration of the jury whether, by reason of intoxication, the accused was, at the time, in such a condition of mind as to be capable of deliberate premeditation. *Hopt* v. *Utah,* 104 U. S. 631, 634, 26 L. ed. 873, 874.

In cases of larceny the specific intent to deprive the owner of his property is a necessary ingredient of the crime. The trespass or unlawful taking, for which a civil action would lie, is not sufficient; it must be coupled with the intent to steal. The question of the intoxication of the accused at the time of the unlawful taking may, therefore, sometimes become an important matter of consideration in ascertaining whether it was done with that intent. That the accused may have been drunk, in the ordinary sense of that word, is not sufficient. He must have been so drunk as to be incapable of forming the intent to steal; that is to say, incapable of consciousness that he is committing a crime,—incapable of discriminating between right and wrong. *Thomas* v. *State,* 92 Ala. 49, 9 So. 540; *Bartholomew* v. *People,* 104 Ill. 601, 606, 44 Am. Rep. 97; *Wright* v. *State,* 37 Tex. Crim. Rep. 627, 633, 40 S. W. 491. See many cases cited on the brief for the appellant. See also Underhill, Crim. Ev. § 166; 1 Bishop, New Crim. Law, § 411; 12 Cyc. Law & Proc. p. 172.

.Without reviewing the many cases in which the question has been considered, we concur with the conclusion stated by Mr. Bishop as follows: "A mere intentional trespass to another's goods does not constitute it [larceny], but the specific intent to steal must be added. So that if one, without the intent to steal, becomes too drunk to entertain it, then, in this condition, takes another's goods, and relinquishes them before the intent could. arise, or returns them the instant his restored mind has cognizance of the possession of them, there is no larceny."

This embraces those cases, also, where the property may have been recovered, or the taker apprehended, before this return to. consciousness with reasonable opportunity to act upon reflection..

In accordance with the views above expressed, we must hold that there was no error in excluding evidence offered to show that the accused was drunk, merely, without offering to show further that the. intoxication was of the character above indicated. In one instance, however, the offer was to show that the accused was "so drunk that he did not know anything" at the time that he demanded and obtained the check for the trunk belonging to another. While this evidence tended to show intoxication of the requisite character to require its submission to the jury, we are of the opinion that its exclusion does not furnish ground for reversal under the special facts and circumstances disclosed in the record.

Whatever may have been the mental condition of the accused as the time of the taking, the evidence showed, beyond question, that after complete return to consciousness, and with ample opportunity to repair the consequences of his misconduct, if unintentional, by offering or seeking to return the property, he deliberately attempted to deprive the owner of the same and to convert it to his own use. Upon his arrival at Memphis, where he spent a day and night, he knew that he had checks for trunks other than his own, whether he actually saw them or not. Instead of then attempting to restore the particular trunk to its owner, or to the railway company which was responsible for the mistake of its agent, he rechecked it to Dallas, Texas. Upon

his arrival in Dallas the trunk was taken, with his own, to his room. Knowing that it was not his, he opened it and attempted to sell some of its contents. He also made deliberately false statements concerning its ownership. These facts were not only proved by the witnesses for the prosecution, but were fully established by the statements of the accused, made in the course of his examination as a witness on his own behalf. In the light of these admitted facts, it is immaterial whether he was drunk or not at the time of receiving the check for the trunk in the station at Washington. They supply the intent necessary to complete the offense of larceny in the District of Columbia, instead of transferring the place of its commission to the State of Texas.

Another assignment of error remains to be considered, though the determination of the question involved is of no practical importance to the appellant. This is founded on an exception reserved to the admission of the evidence tending to show that the accused had in his possession a forged letter containing false statements, by means of which, on the morning of December 24, 1904, he sought to obtain assistance from the rector of St. Patrick's church in the city of Washington.

The general rule is that evidence tending to show that an accused person has committed, or attempted to commit, another crime, wholly independent of that with the commission of which he stands charged, is inadmissible. To this rule there are many well-established exceptions raised by the special circumstances of particular cases. Evidence of other criminal acts is admissible where they are so blended or connected with the one on trial as that proof of one incidentally involves the other. It is often relevant, too, in the establishment of identity, guilty knowledge, intent, and motive. *Moore* v. *United States,* 150 U. S. 57, 61, 37 L. ed. 996, 998, 14 Sup. Ct. Rep. 26; *Fearson* v. *United States,* 10 App. D. C. 536, 538; *Funk* v. *United States,* 16 App. D. C. 478, 493; 12 Cyc. Law & Proc. p. 406; 11 Am. & Eng. Enc. Law, p. 513.

Without discussing these various exceptions, we are of the opinion that this evidence does not come within any one of

them. The possession of the false and forged letter, devised for use in an independent attempt to obtain money from a clergyman, does not appear to have had any connection with the separate and distinct offense charged in the indictment. It was apart from and collateral to the issue to be tried. All that it could tend to show was the depraved character of the accused. *Boyd* v. *United States,* 142 U. S. 450, 458, 35 L. ed. 1077, 1079, 12 Sup. Ct. Rep. 292. No matter how depraved an accused person may be, he must be tried upon competent evidence of the crime charged. His character cannot be shown by the prosecution, unless he himself first puts it in issue.

As above intimated, however, the error committed in admitting this evidence is not sufficient ground for the reversal of the judgment. Had the jury been charged with the assessment of the penalty after conviction, the situation would be different.

Where the accused has made a confession of facts showing his guilt, the erroneous admission of evidence is of no consequence. *Motes* v. *United States,* 178 U. S. 458, 475, 44 L. ed. 1150, 1156, 20 Sup. Ct. Rep. 993. It is true that the accused in this case made no formal confession of guilt, but, in testifying on his own behalf, related the facts which established it. He admitted that he did not intend to offer to return the trunk, that he made false statements as to its ownership, and that he undertook to dispose of some of its contents. The excuse that he offered therefor is entitled to no consideration whatever. The only effect which his statements would seem to have been intended to accomplish was to transfer the commission of the offense to the State of Texas, and work an acquittal, on that ground alone, in the District of Columbia. That it could have no such legal effect has been declared in considering the first question above decided.

The judgment must therefore be affirmed; and it is so ordered.

*Affirmed.*