## CLIFT et al. v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
November 18, 1927.

No. 4980.

**1. Criminal law ⬩1168(1)—Judgment will not be reversed because one charge is not supported by evidence, if another is, and sentence is not greater than might be imposed on that alone.**

Where defendants were convicted generally under an indictment charging conspiracy to commit two different offenses, as to one of which there was sufficient evidence, and the other not, the judgment will not be reversed, if the sentence was not greater than might be imposed on either separate charge.

**2. Criminal Law ⬩388—Test of alcoholic content by "ebulliometer" held admissible.**

On trial on charge of conspiracy to manufacture, possess, and sell intoxicating liquor, test of alcoholic contents by means of ebulliometer, *held* admissible; an "ebulliometer" being apparatus by which, through obtaining boiling temperature of water and of liquid tested, and thereby the specific gravities, the alcoholic percentage could be ascertained.

In Error to the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

Bruce Clift and Gray Clift were convicted under an indictment charging conspiracy to manufacture, possess, and sell intoxicating liquor, and they bring error. Affirmed.

Fred C. Houk, of Knoxville, Tenn., and O. L. McMahon, of Morristown, Tenn., for plaintiffs in error.

Geo. C. Taylor, U. S. Atty., of Knoxville, Tenn.

Before DENISON and MOORMAN, Circuit Judges, and RAYMOND, District Judge.

DENISON, Circuit Judge. The two plaintiffs in error, father and son, were convicted under an indictment which in general terms charged a conspiracy to manufacture, possess, and sell intoxicating liquor. Interpreting the general terms of the indictment by the overt acts alleged and by the proofs, it is clear that the intention was to prosecute the defendants for two separable plans to violate the law, although the two might be said in a vague way to be branches of one general conspiracy. It is the theory of the prosecution that the defendants were guilty of forming and executing a scheme to manufacture and sell at retail moonshine whisky, and a scheme to make and sell at retail home brew. From the general course of the trial it is fairly evident that the jury intended to convict the defendants, of both of these somewhat related transactions.

[1] So far as concerns the whisky, we are satisfied that the evidence was not sufficient to go to the jury. While there was proof tending to show that the manufacture was at least aided and abetted by the father, and that the son, a minor, made some retail sales, there is nothing substantially supporting the inference that the selling was connected with the manufacture, or that the father had to do with the sales, or that the son had to do with the manufacture. Hence there was no proof of this part of the conspiracy.

[2] Including permissible inferences, there was sufficient proof to support a conviction of carrying on a common plan to make and sell home brew. In this branch of the case the only point requiring comment is the defendants' claim that there was no proof of the necessary alcoholic content of the beverage sold. Even without the aid of the test to be mentioned, we are not sure that the evidence would be deficient in this respect. It was shown that the fermentation of this liquid was finished, and that the resulting scum had been skimmed off, and the liquid bottled. It is familiar knowledge that in the regular manufacture of beer the fermentation develops a substantial alcoholic percentage, and that in the now permitted making of nonalcoholic beer, it is necessary to go through a distilling operation in order to get rid of the inevitable alcohol in excess of one-half of 1 per cent. If there were doubt as to whether a liquid manufactured by the process in this record described, and surreptitiously sold as home brew at a relatively high price, contained more than one-half of 1 per cent. of alcohol, we are not sure that it could rightly be called a reasonable doubt. However that might be, the prohibition officer here describes his test, which indicated, he says, between 3 and 4 per cent. of alcohol. He made the test by using the instrument called the "ebulliometer." This is merely a convenient vessel for boiling a liquid. By using it and a specially graduated thermometer, he obtained the boiling temperature, first of water, and then, under the same conditions, of the liquid being tested. The differences in the boiling temperatures, indicating differences in specific gravity, were then translated into percentage of alcohol. This was done by reference to a table or chart purporting merely to state and formulate the scientific knowledge on this subject. We understand the evidence to be that this chart, along with the instrument and the thermometer, were furnished to the witness by the prohibition department and are in general use throughout the country by the representatives of the department for such tests—in other words, that they constitute a commonly recognized standard. In the absence of any challenge as to the accuracy of the standard, we think it may be accepted as some substantial proof that the scientific conclusions therein stated are correct. It seems to be equivalent, so far as it goes, to a standard scientific text-book.

We have, then, a case where a verdict is in some aspects of the prosecution supported by sufficient evidence and in other aspects is

not. The situation is legally the same as if there had been two counts, a general sentence not greater than permitted on either count, and a finding by the appellate court that one count was bad. The sentence would not ordinarily be reversed. Claassen v. United States, 142 U. S. 140, 146, 12 S. Ct. 169, 35 L. Ed. 966.

Judgment affirmed.