GOODALL v. UNITED STATES.

No. 10241.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 14, 1949.

Decided Feb. 13, 1950.

Writ of Certiorari Denied June 5, 1950.

See 70 S.Ct. 1009.

**398**

Mr. Alfred Goldstein, Washington, D. C., with whom Mr. James A. O'Shea, Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and John C. Conliff, Jr., Assistant United States Attorney, Wash-

ington, D. C., were on the brief, for appellee.

Mr. Joseph M. Howard, Assistant United States Attorney, Washington, D. C., also entered an appearance for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Convicted of murder in the first degree by a jury in the United States District Court for the District of Columbia and sentenced to death, Lawrence Goodall appeals.

The victim, Nathaniel Johnson, was a colored druggist in the southwest section of the District of Columbia. About 10:00 o'clock in the evening of October 12, 1948, a young Negro man entered Johnson's store, pointed a pistol at him and said, "Dr. Johnson, this is a hold-up." Johnson turned and ran. As he did so the bandit shot and killed him, then fled from the store. Edna Muse, a customer who had just made a purchase, was waiting for change when the murderer came in. She was less than ten feet away from Johnson when the shooting took place. The store was well lighted. Joseph Jenkins, a fifteen-year-old boy, entered the drug store "About a couple of minutes after ten." As he entered he saw the bandit "aim a pistol and shoot", and saw his face as he left the scene.

Edward Jackson was arrested and charged with the murder. He made a complete confession, and at the trial testified he and Lawrence Goodall had been together most of that day, that Goodall proposed they rob the drug store but that he declined and Goodall proceeded to do the job alone, while he loitered in the vicinity. In a line-up at police headquarters Goodall was identified by Edna Muse and Joseph Jenkins as the man who had shot and killed Nathaniel Johnson. The appellant sought to establish an alibi by telling the jury he went home at 9:30 p. m. and remained there. He was corroborated by his mother.

Several grounds for reversal are urged. First Goodall says his motion to dismiss the indictment was erroneously denied; and second, apparently alternatively, he says the indictment charged no more than sec-

ond degree murder and that he was therefore wrongly convicted thereunder of murder in the first degree.

These contentions make it necessary to examine the indictment and the statute under which it was returned. Murder in the first degree is defined in Title 22, §§ 2401 and 2402, of the District of Columbia Code (1940). Section 2401, applicable here, is as follows: "Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in section 22—401 or 22—402 of this Code, rape, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree. (Mar. 3, 1901, 31 Stat. 1321, ch. 854, § 798; June 12, 1940, 54 Stat. [347], ch. 339, § 1.)"
Any killing with malice aforethought, except as provided in §§ 2401 and 2402, is murder in the second degree.

The indictment was as follows: "On or about October 12, 1948, within the District of Columbia, Lawrence Goodall and Edward Jackson, Junior attempted to perpetrate a robbery by stealing and taking, by force and violence and against resistance and by putting in fear, from the immediate actual possession of Nathaniel Johnson certain valuable property; and in and while attempting to perpetrate the robbery in the manner aforesaid, defendants shot and murdered Nathaniel Johnson with a pistol held in the hand of Lawrence Goodall."

The appellant argues the indictment should have been dismissed because it "failed to charge either a 'purposeful' killing or a killing 'without purpose.'" He says he cannot tell which portion of the statute he was charged with violating.

It will be observed that § 2401 not only denounces as first degree murder a purposeful killing done either with premeditated malice or in committing or attempting to commit a felony, but also characterizes as such a killing done in the perpetration or attempted perpetration of any one of five enumerated felonies, although there was no purpose to kill. As the present indictment did not charge Goodall with purposely killing Johnson, but only with killing him while attempting to rob him, it was necessarily found under the second segment of the statute in which the intent to kill is not an ingredient of the crime and need not be alleged or proved.

This court said in Mumforde v. United States, 1942, 76 U.S.App.D.C. 107, 109, 130 F.2d 411, 413, certiorari denied 317 U.S. 656, 63 S.Ct. 53, 87 L.Ed. 527: "* * * The applicable statute in the District of Columbia defines murder in the first degree as the killing of another while armed with or using a dangerous weapon in the perpetration or attempted perpetration of a robbery. As the statute was a few years ago, it was necessary to show that the killing was done 'purposely' to raise the offense to first degree murder. See Jordon v. United States, 66 App.D.C. 309, 87 F.2d 64. In June, 1940, Congress, at the request of the Attorney General, amended the law so that it now provides that the offense is perpetrated even when the killing is 'without purpose so to do'. Thus, the statute is brought into line with those of many of the States, where a killing committed in an attempted burglary or robbery is declared to be murder in the first degree, and it has been held in those States that the offense is complete even though there was no intent or desire to kill. People v. Smith, Sup., 187 N.Y.S. 836, and State v. McNeal, Mo. Sup., 237 S.W. 738, are typical."

We held in Burton v. United States, 1945, 80 U.S.App.D.C. 208, 151 F.2d 17, certiorari denied 326 U.S. 789, 66 S.Ct. 473, 90 L.Ed. 479, that even though an indictment charged murder in the first degree consisting of purposeful killing and tendered no issue of robbery, proof that the homicide was committed during the perpetration of a robbery legally took the place of that premeditation to kill which is necessary for murder in the first degree.

In Wheeler v. United States, 1947, 82 U.S.App.D.C. 363, 367, 165 F.2d 225, 229,

certiorari denied 1948, 333 U.S. 829, 68 S. Ct. 448, 92 L.Ed. 1115, a case strikingly similar to this one, we further said with respect to § 2401: "* * * As the statute plainly shows, the crime which it denounces is murder committed during the perpetration of a robbery. The fact that a robbery was in progress is simply the element of proof which is necessary in order to convert the killing, done incidentally in the course of the robbery, into first degree murder. In other words, one who kills as he robs is charged by the statute with having that degree of malice which is indispensable to murder in the first degree."

It is thus thoroughly established in this jurisdiction that a homicide committed, "without purpose so to do", in the course of the perpetration or attempted perpetration of a robbery is murder in the first degree. "Where the intent is a material ingredient of the crime it is necessary to be averred; * * *." Evans v. United States, 1894, 153 U.S. 584, 594, 14 S.Ct. 934, 939, 38 L.Ed. 830. But where, as here, a homicide may be first degree murder when there was no intent to kill, the lack of intent to do so is not a material ingredient of the crime and need not be alleged. The sufficiency of a criminal pleading should be determined by practical rather than by technical considerations. Tatum v. United States, 1940, 71 App.D.C. 393, 110 F.2d 555.

The indictment informed Goodall in the plainest sort of language that he was charged with killing Nathaniel Johnson while attempting to rob him, i. e., that he was accused of murder in the first degree. Consequently, we reject his contentions that his motion to dismiss the indictment was erroneously denied and that he was charged with and could have been convicted only of murder in the second degree.

The appellant also claims error in the District Court's failure to tell the jury that, if they believed him guilty of the killing but had a reasonable doubt as to whether he had been proved guilty of murder in the first degree or murder in the second degree, they should resolve that doubt in his favor and find him guilty of the lesser crime. The court did not in so many words instruct the jury to that effect. The prosecution endeavors to show, however, that the court's charge as a whole, when carefully analyzed, is seen to contain what is tantamount to that admonition. We need not and do not decide whether the government is correct in making that assertion, because we regard the question as immaterial. An instruction such as that which the appellant says should have been given is necessary only when from the evidence as a whole the jury might reasonably find the defendant guilty of either first or second degree murder, and therefore must decide which degree had been committed. In those circumstances it is proper for the court to define both crimes, leaving it to the jury to say which, if either, had been committed; and to add that, if they entertained a reasonable doubt as to the degree, they should find the defendant guilty of the lesser crime.

Although the indictment charged murder in the first degree, the appellant could have been found guilty thereunder of murder in the second degree had the evidence warranted it, since a defendant may be found guilty of any offense necessarily included in the crime charged in the indictment. Rule 31(c), Federal Rules of Criminal Procedure, 18 U.S.C.A. But an instruction on a lesser included offense should not be given unless there is evidence to justify it. Burcham v. United States, 1947, 82 U.S.App.D.C. 283, 163 F.2d 761.[1] All the testimony as to what occurred at the drug store pointed to murder in the first degree and nothing else. The only ele-

---

1. The Supreme Court said in Stevenson v. United States, 1896, 162 U.S. 313, 315, 16 S.Ct. 839, 840, 40 L.Ed. 980:
   "* * * the defendant charged in the indictment with the crime of murder may be found guilty of a lower grade of crime, viz., manslaughter. There must, of course, be some evidence which tends to bear upon that issue. The jury would not be justified in finding a verdict of manslaughter if there were no evidence upon which to base such a finding, and in that event the court would have the right to instruct the jury to that effect."

ment of proof relied upon to justify an instruction on second degree murder is the alleged drunken condition of Goodall on the evening of the murder.

The able trial judge instructed on second degree murder probably out of an abundance of caution, because there was evidence tending to show the appellant had been drinking during the afternoon and early evening before the murder. Such evidence is not sufficient to raise a factual question as to whether he was so intoxicated at the time of the murder as to be incapable of intending to rob. Ryan v. United States, 1905, 26 App.D.C. 74, 81, 6 Ann.Cas. 633, where we said: " * * * The question of the intoxication of the accused at the time of the unlawful taking may, therefore, sometimes become an important matter of consideration in ascertaining whether it was done with that intent. That the accused may have been drunk, in the ordinary sense of that word, is not sufficient. He must have been so drunk as to be incapable of forming the intent to steal; that is to say, incapable of consciousness that he is committing a crime, —incapable of discriminating between right and wrong."

The court accordingly held in the Ryan case, 26 App.D.C. at page 82: " * * * there was no error in excluding evidence offered to show that the accused was drunk, merely, without offering to show further that the intoxication was of the character above indicated."

On the other hand it was held that testimony that the accused was "so drunk that he did not know anything" at the time the act was done was improperly excluded.

The record here contains nothing tending to show Goodall was "so drunk that he did not know anything" at the time he entered the store. There was no testimony that at or about the time of the murder Goodall was drunk in the ordinary meaning of that word or to any extent. He did not even suggest to the jury he was then so incapacitated by intoxication as not to realize what he was doing; nor did any other witness so testify.

Instead of tending to show such drunkenness, Goodall's evidence is to the contrary. He told the jury he took care during the afternoon not to get himself drunk, and refrained from taking more whenever he began to feel the effect of the intoxicants which he had already had. Indeed, he stated that at 9:30 p. m. he went home because he was tired. He did not claim that he was drunk then or at any other time, but implied that he was fully conscious of what he was doing, for he said he knew he went home about 9:30 and knew he was not at the drug store at all. In other words, he did not even attempt to prove he was intoxicated, and offered nothing tending to show the extent of intoxication which is necessary, under the Ryan case, to make one incapable of forming an intent to rob. He was relying on, and he testified to, an alibi,—a defense which he could not have sustained by his own evidence, had he claimed to have been incapacitated by drunkenness.

Under all the facts and circumstances it is our view that the question whether there had been only second degree murder because of the killer's intoxication should not have been submitted to the jury, and that the appellant was treated more favorably than he deserved when it was submitted. We therefore do not reach a consideration of the question whether the court properly charged the jury with respect to resolving in the appellant's favor any reasonable doubt as to whether murder had been done in the first or second degree.

[11] Criticism is directed to the trial judge's treatment of the defense of alibi, with respect to which he said to the jury:

"There has been testimony to the effect that the defendant was not present at the time and place when this homicide was committed. The defense of alibi is a legitimate, legal, and proper defense. The evidence adduced in support of this defense, like all the other evidence in the case, should be given such weight and such consideration as you may think it entitled to under all the facts and circumstances of the case.

"If, after a full and fair consideration of all the facts and circumstances in evidence, you find the Government has failed to prove beyond a reasonable doubt that the defendant was present at the time and place of the commission of the offense charged in the indictment, then one of the essential elements of the offense is lacking, and it will be your duty to find the defendant not guilty."

It is difficult to see how the subject could have been treated more clearly and correctly.

█ The appellant further complains that the court erred in permitting the codefendant, Jackson, who was indicted jointly with him, to plead guilty to second degree murder. He claims no prejudice because of that fact, and we see none.

█ Error is assigned because the court permitted the witness, Zimmers, a ballistics expert, to make during the trial an examination of the murder weapon which had been offered in evidence. Goodall was not present when Zimmers tested the gun, so he argues that he was not permitted to be present at every stage of his trial. The short answer to the contention is that the ballistics test was not a part of the trial. As a general rule evidence of such or similar tests or experiments is admissible in criminal cases in the federal courts. Kemp v. Government of Canal Zone, 5 Cir., 1948, 167 F.2d 938, 940; American Tobacco Company v. United States, 6 Cir., 1944, 147 F.2d 93, 119, affirmed 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Clift v. United States, 6 Cir., 1927, 22 F.2d 549, 550. The fact that tests or experiments were made in the absence of the defendant does not render inadmissible evidence concerning them. Corens v. State, 1946, 185 Md. 561, 570, 45 A.2d 340; People v. Fisher, 1930, 340 Ill. 216, 172 N.E. 743, 754; Tanner v. State, 1925, 161 Ga. 193, 130 S.E. 64; Stewart v. State, 1928, 108 Tex.Cr. 661, 2 S.W.2d 440; State v. Newman, 1926, 101 W.Va. 356, 132 S.E. 728, 731; 22 C.J.S., Criminal Law, § 645. We see no reason for holding inadmissible evidence of a test made while the trial was in progress when it is clearly admissible if

the test were made prior to the beginning of the trial.

█ As is our custom in capital cases, we have carefully considered the record and have examined and weighed all arguments advanced for reversal. Guilt beyond question was shown by the evidence. No prejudicial error appears. The verdict of the jury must stand.

Affirmed.