**Thomas HOWARD, Jr., Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 20328.**

United States Court of Appeals
District of Columbia Circuit.

Argued Aug. 16, 1967.

Decided Dec. 6, 1967.

Petition for Rehearing Denied
Jan. 10, 1968.

---

5. Tr. p. 625.

Mr. James J. Bierbower, Washington, D. C., (appointed by this court) for appellant. Messrs. Manuel C. Avancena and James K. Hughes, Washington, D. C., also filed a brief for appellant.

Mr. Edward T. Miller, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and John A. Terry, Asst. U. S. Attys., were on the brief, for appellee.

Before BURGER and ROBINSON, Circuit Judges, and DAVIS,* Judge, United States Court of Claims.

DAVIS, Judge.

Appellant Thomas Howard, Jr., was indicted and tried for first degree murder. Having denied appellant's motion, made after the Government's opening argument and again at the conclusion of the prosecution's case, for acquittal of the offense in the first degree, the District Court charged the jury on first degree murder, second degree murder, and manslaughter. The jury returned a verdict of murder in the second degree, and Howard was sentenced to imprisonment for fifteen years to life.

Since appellant does not challenge the sufficiency of the evidence that he killed the victim, it is unnecessary to give a full précis of the evidence. Joyce Brigmon, a seven year old girl, was murdered on the evening of November 26, 1965, while alone in the first floor apartment of her mother, Iris Brigmon, and her mother's common-law husband, Charles Williams. The evidence showed that her throat was brutally slashed after she screamed "Daddy", apparently for help. There were no eyewitnesses and the

* Sitting by designation pursuant to Section 293(a), Title 28, U.S.Code.

Government's case connecting appellant with the crime chiefly consisted of the circumstantial evidence that he was very near the apartment immediately prior to the crime, that very shortly after the killing he was discovered by Charles Williams in the yard just outside the apartment, that he fled upon being discovered and discarded some of his clothing, and that human blood stains were found on the clothing he threw away in flight. Appellant's testimony was that he discovered the girl's body after she had been murdered and had picked her up, only to be frightened away when Charles Williams appeared and threatened to kill him.

We treat first with a number of secondary grounds for reversal put forward by appellant and then, separately, with his primary point.

## I.

*A.* Appellant contends that the instruction on circumstantial evidence, though concededly embodying the minimum elements required for such a charge and though no objection to it was raised at trial, provides ground for reversal because it was too brief to impress upon the jury the caution to be exercised in a case heavily laced with circumstantial evidence. But it is settled that "Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion." United States v. Bayer, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L. Ed. 1654 (1947); see Holland v. United States, 348 U.S. 121, 141, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Temblador v. Hamburg-American Lines, 368 F.2d 365, 367 (C.A. 9, 1966); Chicago, R.I. & P.R.R. Co. v. Emery, 233 F.2d 848, 850 (C.A. 8, 1956); United States v. Center Veal

& Beef Co., 162 F.2d 766, 772 (C.A. 2, 1947) (L. Hand, J.). This is especially true when, contrary to Fed.R.Crim.P. 30, no proper objection is made to the instruction, and, thus, an appellate court, to reverse, must find plain error within Fed.R.Crim.P. 52(b). See, e. g., Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Namet v. United States, 373 U.S. 179, 190–191, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). Here, the trial judge emphasized that he was adopting this circumstantial-evidence charge (modeled on the Standardized Jury Instructions revised by the Junior Bar Section of the Bar Association of the District of Columbia) because of its brevity and clarity; trial counsel did not object to this explicit exercise of discretion; and the evidence was neither complex nor abstruse. We decline to find error, and certainly there was no plain error.[1]

*B.* Appellant also urges that the evidence was insufficient to support a finding of malice aforethought. We are unable to conclude, however, "that reasonable jurymen must necessarily have * * * [a reasonable] doubt" that Joyce Brigmon was killed with malice. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). The horrible slashing with a sharp instrument of a screaming seven-year-old girl's throat by an adult intruder most certainly allows, if it does not require, the conclusion that the "homicide was accompanied by the intention to cause death or grievous bodily harm * * *." Austin v. United States, 127 U.S.App.D.C. 180, 184, 382 F.2d 129, 133 (1967); see Liggins v. United States, 54 App.D.C. 302, 297 F. 881 (1924);

1. Appellant seems to claim, somewhat half-heartedly, that the trial judge should likewise have charged that the jury could not convict on circumstantial evidence unless that evidence necessarily excluded every other hypothesis but guilt. No charge of that type was sought, and it would not have been error to refuse such a request if made. Holland v. United States, *supra*, 348 U.S. at 139–140, 75 S.Ct. 127; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

United States v. Edmonds, 63 F.Supp. 968, 970–971 (D.D.C.1946).[2]

 Although the point is not mentioned by counsel, we feel constrained by Fed.R.Crim.P. 52(b) and Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967), to note that a phrase in the instruction on malice is incorrect according to *Belton*. Both sets of instructions state that "the law infers" malice from the use of a deadly weapon. *Belton* holds that the quoted phrase is erroneous and that, if an appropriate objection is made, a trial court must instruct the jury that only it may decide whether to draw from all the circumstances, including use of a deadly weapon, the inference of malice aforethought. But, in the absence of an objection, we declined in *Belton* to find plain error. There is no more reason to do so here, especially since the proof of malice was not weak or equivocal.[3] In this case we are aided, too, by the trial court's final words on malice, which helped to correct the error: "you may deduct [sic] [malice] from the act itself and the instrument shown." [4] Even if a portion of a trial court's instructions is incorrect, an appellate court need not reverse if the error is "cured by a subsequent charge or by a consideration of the entire charge * * *." Southern Pac. Co. v. Souza, 179 F.2d 691, 694 (C.A. 9, 1950); *accord,* Redfield v. United States, 117 U.S. App.D.C. 231, 328 F.2d 532 (per curiam), cert. denied, 377 U.S. 972, 84 S.Ct. 1654, 12 L.Ed.2d 741 (1964).

*C.* Another argument is that the trial court committed reversible error by restricting the cross-examination of Charles Williams—step-father of the victim and the first witness for the prosecution—on the subject of whether he had been present the previous day at *voir dire* for the selection of the jury. Earlier on the day of the attempted cross-examination, Williams had stated under oath, but out of the presence of the jury, that he had been at the *voir dire*

2. Counsel for appellant conceded that an inference of malice might be drawn from the circumstances of the murder, particularly from the fact that the girl screamed before her throat was cut, but maintained that the evidence was insufficient because a conclusion of malice requires a "double" or "pyramided" inference that must ultimately rest upon the inference that appellant killed the girl. Counsel considered that inference too weak to support the further inference that appellant committed the crime with malice aforethought. The sufficiency of the evidence to support the conclusion that Howard killed the girl is not questioned, and we see no reason to deal indirectly with that issue. The general language in some cases (referred to by appellant) warning against speculative "double" or "pyramided" inferences (United States v. Ross, 92 U.S. 281, 283–284, 23 L.Ed. 707 (1875); United States v. Russo, 123 F. 2d 420, 422 (C.A. 3, 1941). Rosenberg v. United States, 120 F.2d 935, 937 (C.A. 10, 1941); Nations v. United States, 52 F.2d 97, 105 (C.A. 8, 1931)) does not apply to the present circumstances in which a jury which found appellant the killer could hardly avoid the further finding, on the evidence, that he killed with malice. That conclusion would not be speculative or remote. Appellant's citations do not rigidly prohibit all conclusions more than one step removed from a fact proved by direct evidence. "The acceptability of the inference drawn turns on whether it has been founded upon 'fact' regardless of whether such fact has been arrived at by direct or circumstantial evidence." Toliver v. United States, 224 F.2d 742, 745 (C.A. 9, 1955); *see* United States v. Hopps, 331 F.2d 332, 334–336 (C.A. 4), cert. denied, 379 U.S. 820, 85 S.Ct. 39, 13 L.Ed.2d 31 (1964).

3. A court may be more hesitant to hold an ambiguous or incorrect instruction harmless when the evidence is closely balanced. *See* United States v. Garguilo, 310 F.2d 249, 254 (C.A. 2, 1962); Cooper v. United States, 123 U.S.App.D.C. 83, 85–88, 357 F.2d 274, 276–279 (1966) (Bazelon, C. J., separate opinion); *cf., e. g.,* Krulewitch v. United States, 336 U. S. 440, 444–445, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Cannady v. United States, 122 U.S.App.D.C. 99, 101, 351 F.2d 796, 798 (1965).

4. Modifying language in the Belton charge, *see* 127 U.S.App.D.C. at 205, 382 F.2d at 154, n. 11, did not correct the error as clearly, although it did support the conclusion that the error was harmless.

and had been identified to the panel.[5] Defense counsel did not attempt to cross-examine at that time but shortly thereafter, on cross-examination in open court, he did raise this problem and asked Williams several questions on the latter's presence in the courtroom at *voir dire*. Although Williams' evidence was consistent with the record and with the recollection of the trial court and the prosecution, defense counsel thought he had been absent and sought to test his credibility and competency by further inquiry into the matter of whether he had stood to be identified. The court refused to allow this line of questioning.

 Although opportunity to cross-examine is a fundamental right demanding great respect (*e. g.*, Alford v. United States, 282 U.S. 687, 691–692, 51 S.Ct. 218, 75 L.Ed. 624 (1931)), the courts have also recognized that regulation of the extent and scope of cross-examination must generally lie within the discretion of the trial court [6] and reversal is warranted only where an abuse of discretion leads to prejudice.[7] We believe that the District Court did not abuse its discretion or commit prejudicial error when it limited the cross-examination of Charles Williams. He was asked and answered several questions on the subject of his presence at the *voir dire*. No substantial basis exists for believing that he was not then present or identi-fied. We will not reverse the judge for cutting off what he reasonably believed (partly on the basis of his own recollection) was a fruitless endeavor that would succeed only in needlessly proliferating and confusing the issues. Cf. Lee v. United States, 125 U.S.App.D.C. 126, 128–129, 368 F.2d 834, 836–837 (1966). This is all the more so since the questions posed were designed solely to test Williams' general credibility. A trial court has much more leeway with respect to cross-examination for that purpose than with cross-examination on subjects raised on direct. *See* Collazo v. United States, 90 U.S.App.D.C. 241, 252–253, 196 F.2d 573, 584, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952); Wright v. United States, 87 U.S.App.D.C. 67, 183 F.2d 821 (1950) (per curiam); Lindsey v. United States, 77 U.S.App.D.C. 1, 3, 133 F.2d 368, 370 (1942).

 *D.* We need touch only briefly on appellant's assertion, as a ground for reversal, that the evidence produced by the Government at the preliminary hearing was insufficient to sustain a finding of probable cause.[8] Prior to this appeal appellant had not raised this issue at any time. In these circumstances, and after indictment and trial, the contention finds no support whatever in Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967), rehearing *en banc* denied, 127

---

5. This questioning arose in connection with the defense's motion for a mistrial on the ground that Williams had not been identified to the jury. (Defense counsel's interest in this matter apparently stemmed from the possibility, in counsel's view, that Williams could have been the killer.) Appellant does not maintain that the denial of a mistrial constituted reversible error.

6. *See, e. g.*, Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Abeyta v. United States, 368 F.2d 544 (C.A.10, 1966); Collazo v. United States, 90 U.S.App.D.C. 241, 252, 196 F.2d 573, 584, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952); Dickson v. United States, 182 F.2d 131, 133 (C.A.10, 1950); Lindsey v. United States, 77 U.S.App.D.C. 1, 2, 133 F. 2d 368, 369 (1942); 4 W. BARRON, FEDERAL PRACTICE AND PROCEDURE §§ 2183, 2582 (1951, Cum.Supp.1964, & Supp. 1966), and cases cited.

7. *See*, F.R.Crim.P. 52(a); Alford v. United States, 282 U.S. 687, 692, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Brooks v. United States, 330 F.2d 757, 758 (C.A. 10, 1964) (per curiam); Kitchen v. United States, 95 U.S.App.D.C. 277, 280–281, 221 F.2d 832, 834–835 (1955); Arnette v. United States, 158 F.2d 11, 12 (C.A.4, 1946) (per curiam); cf. Cannady v. United States, 122 U.S.App.D.C. 99, 101, 351 F.2d 796, 798 (1965).

8. The sole Government witness was a police officer, whose testimony was in part hearsay.

U.S.App.D.C. at 14, 380 F.2d at 561 (1967), or in any of the separate statements of the judges on the petition for rehearing.

## II.

The primary focus of the appeal is that the trial court erred in denying the motion for acquittal of murder in the first degree and submitting that issue to the jury on insufficient evidence of premeditation and deliberation. We do not reach the question of the adequacy of the evidence, for we agree with the Government that, even if erroneous, the submission of first degree murder, when the jury returned a verdict in the second degree, was harmless.

 Counsel has presented us with, and our research has revealed, no authority dealing with the precise problem. However, this court has held that it is not reversible error to instruct on a lesser included offense, even though there is no evidence to support that charge, if the jury returns a verdict of guilty of the greater offense. Goodall v. United States, 86 U.S.App.D.C. 148, 151–152, 180 F.2d 397, 400–401, 17 A.L. R.2d 1070, cert. denied, 339 U.S. 987, 70 S.Ct. 1009, 94 L.Ed. 1389 (1950).[9] Recently, in Austin v. United States, 127 U.S.App.D.C. 180, 382 F.2d 129 (1967), the court held that a federal appellate court has "the power to modify a criminal judgment to reduce the conviction to that of a lesser included offense, where the evidence fails to support one element of the crime of which appellant was charged and convicted but sufficiently sustains all the elements of the included offense." 127 U.S.App.D.C. at 193, 382

F.2d at 142. The error found in Austin was the same as that which appellant says was committed here: submission of the issue of murder in the first degree to the jury despite insufficient proof of premeditation and deliberation. In each case a charge of first degree murder was given, though it should not have been,[10] and the defendant was convicted in the second degree without a new trial.[11]

 Goodall and Austin, taken together, show that the erroneous submission to the jury of an offense of which the accused is not convicted is not reversible unless there is prejudice. In Austin the court thought it "clear that no undue prejudice [would] result" from the entry of a conviction of second degree murder. Id. at 193, 382 F.2d at 142. Nevertheless, the present appellant contends that he did suffer undue prejudice. He claims that the "brooding omnipresence" of the death penalty forced trial counsel to discuss that punishment and to focus on the issue of premeditation and deliberation; that the submission of the first degree charge may have induced the jury to compromise by returning a verdict of murder in the second degree rather than one of acquittal or manslaughter; and that, if the motion to acquit had been granted at the end of the Government's case, counsel in developing trial tactics might not have felt compelled to put appellant on the stand. These alleged harms are unreal, if not wholly illusory.

Government counsel mentioned the death penalty only, once in his closing statements (when he announced to the jury that the Government was not recommending it). More important, counsel

9. If the jury in the cited case had returned a verdict of guilty of the lesser offense, the problem would be that of Green v. United States, 95 U.S.App.D.C. 45, 218 F.2d 856 (1955), in which this court reversed a conviction of second degree murder. Subsequently, the Supreme Court held that the defendant's conviction of first degree murder on retrial, after the jury had declined in the first trial to convict him of that offense, amounted to double jeopardy. See Green v. United

States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The latter case means, of course, that appellant could never be convicted of the first degree murder of Joyce Brigmon.

10. That is our hypothesis in the present case; as indicated above, we do not decide the issue.

11. The order of remand in Austin left the trial court with discretion to order a new trial. We deal with this issue infra.

for the defense never raised the subject after the second motion to acquit was denied. It is true that a substantial portion of the closing argument for appellant, as well as that of the Government, was devoted to the issue of premeditation and deliberation. But a reading of the defense's exceedingly brief presentation shows that the focus on premeditation and deliberation in no way foreclosed argument on any other issue.[12] Moreover, there is no hint in the record that the emphasis in the argument and the charge on premeditation and deliberation confused or misled this jury which found for appellant on that score.

Appellant's second hypothesis of prejudice—that the instruction on first degree murder may have unduly influenced the verdict in the second degree—gives the jury far less credit than it deserves. We see, and appellant offers, no theory upon which to base a realistic conclusion that the jury might have compromised its views because of, or was confused and misled by, the mere submission of the first degree charge for its consideration. With the judge's charge on first degree, second degree, and manslaughter before it, the jury decided that the offense of murder in the second degree fitted the evidence. On this record there was nothing unusual or untoward about that reasonable determination. Similarly, there is no ground to suppose that, if only second degree murder and manslaughter had been submitted to them, the jury would, on this record, have chosen the latter. Appellant's counsel did not argue for a finding of manslaughter, or even discuss it, but rather that his client was innocent; and the evidence was such that a jury which held defendant to be the killer would in all probability also go on to find that he killed with malice. *See* note 2, *supra.*

The last of appellant's claims is that counsel might not have taken the risk of putting defendant on the witness stand if the first degree murder charge had been withdrawn at the conclusion of the Government's case. The record indicates, however, not only that counsel had little choice as to putting appellant on the stand but that no basis exists for concluding that the trial strategy would or should have differed if the offense of first degree murder had not been before the jury. Appellant's attorney concentrated on three arguments: first, the weakness of the prosecution's circumstantial evidence; second, appellant had no motive for the killing and, in fact, other persons—notably the girl's mother (who was proved to have been at work) or her step-father—had more of an opportunity and motive to kill her than appellant had; third, appellant's recital of the events of that evening was true. Appellant was the only defense witness.

 It is very unlikely that, had the first degree murder charge been dropped, the defense would have declined to put appellant on the stand and would have instead relied solely on the claimed weaknesses in the Government's case and on the unsubstantiated possibility that someone else murdered the girl. Further, if this strategy (keeping defendant off the stand) was too weak to use in defense of a first degree murder charge, it would have been equally weak in defense of the lesser offenses. The sole difference between first and second degree murder is premeditation and deliberation, but the direct and redirect examination of appellant was designed to exonerate him of all guilt, not to negate evidence of premeditation and deliberation.

 We are left with one final question. In *Austin* the court "remanded to the District Court with directions to enter a judgment of guilty of murder in the second degree * * * unless the

---

12. In particular, the defense's lack of attention to the issue of the sufficiency of the evidence for a finding of malice, a question raised in this court, cannot be attributed to the denial of the motion for

acquittal of first degree murder. Counsel could quite easily have argued to the jury that the evidence was inadequate to support an inference of either malice or premeditation and deliberation.

District Court determines that a new trial is in the interest of justice." 127 U.S.App.D.C. at 194, 382 F.2d at 143. This was done because the District Court had a better vantage point for determining the existence of prejudice in that case. However, we do not believe it necessary to give that choice in every instance, particularly where, as here, it is clear to us that the appellant could not have been prejudiced by the court's alleged error.

Affirmed.