William D. MITCHELL, Appellant,

v.

UNITED STATES of America,
Appellee.

Eddie DEVONE, Appellant,

v.

UNITED STATES of America,
Appellee.

Wayne A. BOONE, Appellant,

v.

UNITED STATES of America,
Appellee.

Langford BEACHAM, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 20803–20806.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 22, 1967.

Decided March 18, 1968.

Mr. David Booth Beers, Washington, D. C. (appointed by this court), for appellants.

Mr. Scott R. Schoenfeld, Asst. U. S. Atty., for appellee. Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, TAMM and ROBIN-SON, Circuit Judges.

TAMM, Circuit Judge.

The four appellants in this case were convicted by a jury trial of the offense of "stealing" property belonging to the District of Columbia [1] and were acquitted of the charges contained in three other counts of the same indictment. All of the charges grew out of the same incident. The versions of the affair, of course, vary as between the testimony of the Government's witness, a police officer in mufti driving his own automobile, and that of the defendants, males dressed as females. Basically, the Government's testimony was addressed to proving that the defendants forced their way into the officer's automobile, attempted to rob him of his wristwatch, and after some scuffling seized his service revolver and fled the scene. Defendants claimed the officer enticed them into his automobile, made improper advances to them which resulted in a struggle during which they seized the officer's gun "in self-defense," and then ran away, taking the gun with them.

Although the combined appeals charge several grounds of error in the trial proceedings, we find it necessary at this time to consider but one of them, id est, that in the court's charge to the jury on the elements of the crime of stealing property belonging to the District of Columbia the court not only neither delineated nor defined those elements, but the elements of *scienter* and intent to appropriate permanently were completely omitted. The court's charge on this point was as follows:

Now, the fourth count alleges larceny of property in the District of Columbia,

---

1. "Whoever shall embezzle, steal, or purloin any money, property, or writing, the property of the District of Columbia, shall suffer imprisonment for not exceeding five years or be fined not more than five thousand dollars, or both." D.C.Code Ann. § 22–2206 (1967).

and that alleges that on or about March 4, 1966, within the District of Columbia, the four defendants did steal and purloin the property of the District of Columbia, a municipal corporation, having a total value of about $54.00 consisting of one pistol of that value. Now, in order to constitute larceny, the taking of property must be accompanied with the intent to steal it. The intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken. If the taking is under a bona fide claim of right, however unfounded, it is not larceny because it negates an intent to steal. In other words, if a person honestly thinks that he is entitled to take the property, taking is not larceny if he is mistaken in that belief.

Now, larceny from the District of Columbia is simply larceny of property which belongs to the District of Columbia, and in this case, allegedly the pistol. Now, I spoke to you about aiding and abetting.

■ We recognize, of course, that many words used in statutory definitions of specific crimes have generally accepted and understood meanings regularly attached to them because of their common and everyday use. "Steal" and "purloin" are undoubtedly in this category, but the court's charge to the jury contains no definition of either word, and consequently creates a situation in which jurors, lacking guidance, may have attributed to the words a connotation not legally acceptable. Our problem is further complicated by the fact that in the charge the judge, after first utilizing but not defining the general statutory words, steal and purloin, then changed in the second sentence of this statement to the use of the word "larceny" and proceeded to briefly define that term but without specifying the elements of larceny. While the facts in the case may have justified a charge limited to the elements of larceny, the introduction of the words steal and purloin created an obligation on the

trial judge to explain their meaning and relation to the larceny term.

■ The significant words in the statute resulting in appellant's conviction are of course "embezzle, steal or purloin." These words indicate that the Congress intended to include in the penalized conduct every offense falling between common law larceny and embezzlement. See Crabb v. Zerbst, 99 F.2d 562 (5th Cir. 1938); United States v. Handler, 142 F.2d 351 (2d Cir.), cert. denied, 323 U.S. 741, 65 S.Ct. 40, 89 L.Ed. 594 (1944); Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 162–163, 117 F.2d 774, 775–776 (1941). In Crabb, Judge Holmes, while discussing the breadth of a federal statute with a section dealing with robbery and larceny and another section dealing with embezzlement, stealing, and purloining, stated as follows:

> [The words steal and purloin were added to the section specifying embezzlement] to cover such cases as may shade into larceny, as well as any new situation which may arise under changing modern conditions and not envisioned under the common law * * *. Between * * * [embezzlement and larceny] there lies a gap which has grown wider and wider as the multifarious activities of the central government have spread and increased. Stealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another, and deprives the owner of the rights and benefits of ownership * * *.

99 F.2d at 565.

In Handler, Judge Swan, writing on behalf of himself and Judges Learned and Augustus Hand, endorsed this reasoning and added that "[i]n various federal statutes the word 'stolen' or 'steal' has been given a meaning broader than larceny at common law. See United States v. Trosper, D.C.S.D.Cal., 127 F. 476, 477, 'steal' from the mail; United States v. Adcock,

D.C.W.D.Ky., 49 F.Supp. 351, 353, interstate transportation of 'stolen' automobile." 142 F.2d at 353. Although the cases above were referring to federal statutes, the fact that the same legislative body enacted D.C.CODE ANN. § 22–2206 (1967) militates in favor of the same broad construction. Thus, it seems that the use of "embezzle, steal or purloin" demonstrates Congress' intent to include those wrongful taking offenses which are defined generally elsewhere in the Code. In the very least, robbery, embezzlement, and larceny of property belonging to the District of Columbia are outlawed by this statute.

■■■ As a jury charge "should be drawn with reference to the particular facts of the case on trial," Collazo v. United States, 90 U.S.App.D.C. 241, 246, 196 F.2d 573, 578, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952), a trial judge would not be obligated to delineate the issues of each of the crimes covered by § 22–2206. He would, however, be obligated to specify the elements of the crime or crimes most closely related to the factual situation.[2] *See* Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965); Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965).

■■ Returning briefly to the trial court's use of the term larceny as heretofore set forth, we note that included within the elements of that offense are (1) a taking of valuable property from one *rightfully* possessed, Washington v. United States, 213 A.2d 819 (D.C.App. 1965), (2) a carrying away of this property, Levin v. United States, 119 U.S. App.D.C. 156, 338 F.2d 265 (1964), cert. denied, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965), and (3) the accomplishing of the taking and carrying away with an intent to appropriate the property to a use inconsistent with the rights of the rightful possessor, Mills v. United States, 97 U.S.App.D.C. 131, 228 F.2d 645

(1955). In comparing these elements to the actual charge, it is obvious that the only element which the judge made any attempt to delineate and define was the wrongful intent. While charging the jury on the robbery counts, upon which the appellants were acquitted, the judge did speak of the elements of property value and wrongful taking. This hardly seems adequate to cover the shortcomings of the § 22–2206 charge, since the taking, constituting an element of robbery, is substantially different from a larceny taking and since the trial judge did not refer the jury to those portions of his earlier charge. Finally, the last sentence of the charge relating to the offense for which appellants were convicted grossly oversimplifies the offense and tends, we conclude, to mislead the jury.

■■ In addition to these shortcomings, the appellants also contend that larceny requires proof that the property was taken with an intent to appropriate it permanently and that it was taken with knowledge that the property belonged to the District of Columbia. The contention that property must be appropriated permanently is premised on 2 WHARTON CRIMINAL LAW, § 454 (Anderson ed. 1957), which states: "Larceny is not committed when the defendant takes the property of the owner with the intent of borrowing it temporarily and of returning it thereafter to the owner." This statement is supported by citations to cases in 19 different jurisdictions, including Ryan v. United States, 26 App. D.C. 74 (1905). The court in *Ryan*, while holding that it was not reversible error to exclude evidence of the defendant's intoxication generally, stated that one would not be guilty of larceny if he took another's goods while too drunk to entertain an intent to steal and returned them the instant he became cognizant of the possession of them. Thus, this case does not stand for the proposition that a necessary element of larceny is an in-

---

**2.** The best procedure would appear to be an instruction first indicating the breadth of § 22–2206 and then a more specific charge in relation to a particular type of crime.

tent to appropriate property permanently. Moreover, it is arguable that an intent to appropriate property permanently is not an element of larceny in the District of Columbia. Although no case in this jurisdiction has been found which makes a finding on this specific issue, this court has frequently referred to larceny as a taking and carrying away of something of value without specifying an intent to take permanently. *See e. g.*, Hiet v. United States, 124 U.S.App.D.C. 313, 314, 365 F.2d 504, 505 (1966). Judge Miller of this court once stated:

> In a number of cases which purported to apply the common-law definition, persons were held guilty of larceny in spite of the fact that in each case it was not the intention of the taker permanently to deprive the owner of his property. In fact, the only rule as to felonious intent in larceny to which all the cases can be reconciled, is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken.

Pennsylvania Indemnity Fire Corp. v. Aldridge, *supra*, 73 App.D.C. at 163, 117 F.2d at 776. (Footnotes omitted.) A review of a number of the cases referred to by Judge Miller convinces us of the soundness of his position, and we therefore reject appellants' contention that larceny requires an intent to appropriate property permanently.

The appellants' argument that § 22–2206 demands proof of their knowledge that the property was owned by the District of Columbia presents a more difficult question. No case directly considering this issue has been cited, and we have found none. The issue, then, is one of first impression.

This case is appropriate for deciding whether *scienter* is a necessary element, since the question of whether appellants knew or had reason to believe the com-

plaining witness was a police officer before they took the pistol is squarely presented by the testimony. The policeman testified that he revealed his identity to appellants as soon as the fight in the car began, (Tr. 6). On the other hand, appellant Mitchell testified that he "never heard * * * [the officer] say anything about he was a police officer," (Tr. 206). Appellant Devone said that the officer revealed his identity only after Devone left the car and was running away, (Tr. 231, 232). Neither defendant Boone nor defendant Beacham was asked any questions on this issue. Thus, if *scienter* is held to be a necessary element of the offense, the jury must resolve the factual dispute.

On one hand, the appellants argue that § 22–2206 is analogous to 18 U.S.C. § 641 (1964), which states that it is a crime to embezzle, steal, purloin, or knowingly convert property belonging to the United States.[3] In Findley v. United States, 362 F.2d 921 (10th Cir. 1966), the Court of Appeals for the Tenth Circuit held that it was plain error for the district court judge to omit an instruction to the effect that "the government [must] prove beyond a reasonable doubt that the defendant knew that the property involved belonged to, and was stolen from, the government." This case has little argumentive force, however, because the very question which now concerns this court—whether knowledge of government ownership is a necessary element of the statutory offense—was seemingly assumed by the Court of Appeals for the Tenth Circuit. The court in *Findley* offered neither reason nor precedent for stating that it was necessary to demonstrate *scienter*. Moreover the Government's basic contention in *Findley* seemed to be that the jury instructions covered the knowledge element rather than a contention that knowledge was *not* a necessary element.[4] Therefore, the analogy to *Findley* and section 641 is weak.

---

3. The Government has admitted that 18 U.S.C. § 641 (1964) is analogous but contends that *scienter* is also not an element of a § 641 offense. *But see*

Findley v. United States, 362 F.2d 921 (10th Cir. 1966).

4. *See* 362 F.2d at 922.

On the other hand, the appellees seek to analogize to cases construing 18 U.S.C. § 111 (1964), which outlaws assaults on federal officers while performing official duties. Although several courts have held that knowledge of the victim's federal employment is an element of a § 111 offense,[5] there is a discernible trend of decisions to the contrary.[6] The reason underlying this trend to eliminate *scienter* from a § 111 offense, however, appears to destroy its relevance for the instant situation. To support its holding that *scienter* was unnecessary, the Court of Appeals for the Second Circuit stated that legislative history indicated that the overriding concern of Congress in enacting this statute was "to provide a federal forum for the trial of cases involving various offenses against federal officers." United States v. Lombardozzi, 335 F.2d 414, 416 (2nd Cir. 1964). Thus, the Second Circuit reasoned that the judiciary should not interpret § 111 as requiring any elements not required by ordinary assault statutes where the Congress enacted a statute closely resembling an ordinary assault statute for the purpose of having assaults on federal officers tried in a federal forum.[7] Significant in evaluating the reasoning underlying these recent decisions that *scienter* is not a necessary element in the cases discussed is the unique status of the purely local courts in the District of Columbia and their relationship to courts in the federal system. Here we have a situation in which Congress is the legislative body, enacting statutes on the one hand which are purely local in their scope and application while creating statutes which embrace the federal courts on a national basis, and also writing laws, particularly relating to felonies, which affect only the federal courts of the District of Columbia. This situation is further complicated by the appellate jurisdiction of this court to pass, under varying conditions, upon the actions of the courts comprising the local courts of the District of Columbia. We conclude, consequently, that the reasoning of other circuits on the question of the necessity of *scienter* are of limited value to us.[8]

We find, then, that the analogies offered by the appellants and appellee are obviously lacking in the reasoning that make analogies helpful. They are further weakened by the absence of a decision by this court on either of the suggested analogous questions.

A judicial construction of § 22–1201 (outlawing the embezzlement of property belonging to the District of Columbia) or § 22–2207 (outlawing the receipt and concealment of property known to have been unlawfully taken from the District of Columbia) would be more helpful, but none has been found. A search for analogous statutes and case law in state jurisdictions also proved fruitless. Finally, an examination of the legislative history of § 22–2206 revealed nothing which would indicate whether Congress intended *scienter* to be an element of the offense. Thus, none of the more persuasive reasons for construing a statute one way or another aid the court in this case.

---

5. Walker v. United States, 93 F.2d 792 (8th Cir. 1938); Sparks v. United States, 90 F.2d 61 (6th Cir. 1937); Chiaravalloti v. United States, 60 F.2d 192 (7th Cir. 1932).

6. United States v. Wallace, 368 F.2d 537 (4th Cir. 1966), cert. denied 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136 (1967); United States v. Lombardozzi, 335 F.2d 414 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); Bennett v. United States, 285 F.2d 567 (5th Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961).

7. Subsequent cases have adopted the same rationale.

8. Other reasons which might justify a federal criminal statute also seem inapplicable to crimes defined in the D.C. CODE. For instance, Congress may have enacted the government theft statute and the federal assault statute to set a single, nationwide standard or to guard against the possibility that the laws of a particular state would not cover these wrongful acts.

On one hand it may be argued that if Congress intended specific knowledge as a requirement, it would have specified it as it did in § 22–2207, the statute making it illegal to receive or conceal property "knowing the same to have been embezzled, stolen or purloined from the District of Columbia." United States v. Lombardozzi, *supra* at 416. This is, however, less than convincing, for it appears that Congress was merely trying to equate this offense, except for its relation to District property, with § 22–2205, which outlaws the receipt and purchase of property *known* to have been stolen. The argument just suggested would not be forceful unless the statute provided that one shall not receive property known to have been stolen *and known* to belong to the District of Columbia. One might also contend that *scienter* is not a necessary element of a § 22–2206 offense because Congress merely intended to relieve the Government from the burden of proving that the property stolen had value, a burden which the prosecution must carry under the general larceny statutes. See Brock v. United States, 122 A.2d 763 (D.C.Mun.App.1956). There are, however, a number of factors detracting from the force of this argument. First, legislative history offers no support whatsoever. Second, if this were the reason prompting the statute, the reason would seem to apply with greater force to the nationwide statute outlawing theft of property belonging to the federal government. But that statute, 18 U.S.C. § 641 (1964), specifies "any record, voucher, money, or *thing of value*" (emphasis supplied) as the objects which one may not steal or embezzle. Finally, the burden of proving value under the ordinary larceny statutes has seldom been a stumbling block[9] and therefore would not seem to be a reason prompting Congress to enact a special statute to eliminate the burden.

■■ On the other hand, there are several reasons for arguing that knowledge of ownership by the District of Columbia is a necessary element in a § 22–2206 offense. First, one may point to the statutory language specifying "property of the District of Columbia" and apply the reasoning of the Supreme Court in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952):

> The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly [see United States v. Hudson & Goodwin, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259; United States v. Gooding, 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693] admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.

342 U.S. at 263, 72 S.Ct. at 249.

■ This statement suggests that the judiciary should be hesitant to depart from a literal reading of a criminal statute; as there is no strong reason for omitting the *scienter*,[10] the statutory language indicates that it is an element of a § 22–2206 offense. Second, the penalties provided for petit larceny and "petit" embezzlement are relatively minor.[11] It is quite possible that because of the greater vulnerability of low-valued government property (street lights, refuse containers, park benches, office supplies, etc.), Congress intended to create a greater deterrent to this type of theft and

---

9. A "writing" would probably present the most difficult value question and that type of property is specifically included within the statute.

10. Compare the reasoning of the courts in construing the federal assault statute, *supra*, note 6.

11. For petit larceny, one may be fined up to $200 and/or imprisoned for a year (22–2202). Embezzlement of property valued at less than $100 may result in a fine of $200 and/or imprisonment for one year (22–1207).

embezzlement and, therefore, enacted § 22–2206 with more severe penalties.[12] Since § 22–2206 would be a greater deterrent only if the potential wrongdoers were aware that the property they were intending to steal belonged to the District of Columbia, the statute would have its intended effect only if construed to require *scienter*. Although this reasoning finds no more support in legislative history than the arguments already discussed, it seems more persuasive than the others. This reasoning, coupled with the rule of construction for criminal statutes endorsed by the Supreme Court in *Morrissette*, provides substantial grounds for holding that knowledge of government ownership is a necessary element of the § 22–2206 offense. We conclude, therefore, that this reasoning is sound and accordingly hold that *scienter* is an essential element to be established in the proof of a violation of this section of the District of Columbia Code. We emphasize, however, that this element of the crime may be shown either by specific knowledge of District of Columbia ownership or by the establishment of sufficient facts to put a reasonable person on notice of the District ownership. This is the generally accepted interpretation of the *scienter* requirement in such statutes. *See, e. g.,* Pettibone v. United States, 148 U.S. 197, 206–207, 13 S.Ct. 542, 37 L.Ed. 419 (1893); Walker v. United States, 93 F.2d 792, 795 (8th Cir. 1938).

■ Because of the broadness of § 22–2206, it obviously covers several types of crime. The trial court's charge was inadequate to properly instruct the jury upon all the crucial elements of the offenses embraced within the prosecution's evidence. We must reverse the convictions and remand the case to the District Court for a new trial. This disposition makes it unnecessary for us to consider other grounds suggested for review by appellants' counsel.

Reversed and remanded.

---

12. One convicted under § 22–2206 is liable to a fine up to $5,000 and/or imprisonment up to 5 years.