**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony PICCOLO, Defendant-Appellant.**

**No. 81–1238.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1981.

Decided Jan. 4, 1983.

Rehearing Granted April 7, 1983.

---

Opinion on the Granting of Rehearing
En Banc April 7, 1983.

Carl Ziemba, Detroit, Mich., for defendant-appellant.

Richard A. Rossman, U.S. Atty., Ross Parker, Maura Corrigan, Asst. U.S. Attys., Detroit, Mich., for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and BROWN *, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Anthony Piccolo appeals his conviction by a jury for conspiracy to distribute, distribution, and possession of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1).[1] Piccolo received a five year sentence on the conspiracy count and a single five year sentence on the other two counts. Both sentences are to run concurrently.

On appeal, the defendant argues that vagueness in the indictment along with insufficient jury instructions and lack of specificity as to the nature of the charged conspiracy give rise to a host of reversible errors. Furthermore, he asserts that the court below erred in admitting the hearsay declarations of co-conspirators and evidence of past criminal practices.

We reverse the conspiracy count. Because of the multiplicity of the distribution and possession counts, we remand for resentencing.

## I. Facts

Joseph Finnigan, an undercover F.B.I. agent, came into contact with a Detroit attorney, Jerome Allen, in late 1978. Allen was involved in the narcotics trade. On February 1, 1979, according to Finnigan's testimony at trial, he and another agent, Joseph Rassey, met with Allen and John Blue. Blue was cooperating with the federal agents.

At this meeting, Finnigan and Rassey posed as individuals interested in purchasing cocaine. Allen and Rassey discussed a potential deal and Allen indicated that his source, Ernie Marcangello, could supply half a pound of cocaine. Later that evening, according to Finnigan, John Blue delivered a sample of cocaine to the agents. He claimed that he had obtained the sample from Allen and Marcangello.

Finnigan again met Allen on February 9th to discuss a purchase of cocaine. Five days later, in a telephone conversation, Allen stated that he had the cocaine and wished to make arrangements for the sale. They set the transaction for the next day, February 15th, at the Hyatt Regency Hotel.

On the fifteenth, Agent James Knopf, according to his own testimony, saw Allen drive to Marcangello's Detroit home. Allen testified that he asked Marcangello if he was interested in making the sale to Finnigan and Rassey. Marcangello, Allen stated, wished to make the sale, but claimed that he did not have the cocaine. Rather, "He had to get it from 'Pic' ". After that interchange, Allen and Marcangello drove to a home in St. Clair Shores. This was the home of Anthony Piccolo.

Knopf and other agents saw Marcangello and Allen enter Piccolo's home and stay no more than 45 minutes. Allen testified that once inside the house, Marcangello and Piccolo went into the kitchen and out of his sight. When they came back, Allen and Marcangello left. Once in the car, Marcangello told Allen that he now "had it" and Allen presumed that he meant the cocaine. The pair proceeded to the Hyatt Regency.

Rassey and Finnigan, the two agents, met Marcangello and Allen in a room at the hotel. Finnigan expressed doubts about the

---

* Circuit Judge Bailey Brown became a Senior Circuit Judge on June 16, 1982.

1. 21 U.S.C. § 846 provides that:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the

commission of which was the object of the attempt or conspiracy.

21 U.S.C. 841(a)(1) provides that:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

quality of the cocaine and, according to Finnigan and Rassey, Marcangello and Allen, in response, both stated they had just come from the source. Finnigan testified that Marcangello produced four ounces of cocaine, that Rassey tested it and that Rassey then paid Marcangello $8,000.

The four men had additional discussions about the possibility of larger and regular purchases of cocaine. Rassey and Marcangello then left the room and went down to the hotel lounge. Rassey testified that Marcangello told him he could set up a cocaine deal and that his source was an Italian about twenty years older than himself. A half hour or so later, Allen and Finnigan joined Rassey and Marcangello and the meeting terminated.

Rassey testified that he had several more telephone conversations with Marcangello about further deals. Allen and Marcangello were arrested in June, 1979.

Allen testified that he had met Piccolo on a boat prior to the sale and had had a telephone conversation during which Piccolo discussed "what kind of people" the two agents were. He testified, however, that he never discussed the sale of narcotics. Furthermore, Allen testified that he had on one occasion seen Piccolo give Marcangello a plastic bag with a white substance in it. He was not aware what this substance was, nor did he see money change hands. Finally, Allen testified that Marcangello informed him that Piccolo had made other sales of cocaine.

By an indictment handed down July 22, 1980,[2] defendant Piccolo was charged with conspiracy to possess cocaine with intent to distribute (count I), possession with intent to distribute (count II) and distribution of cocaine (count III).

Defendant filed a motion to quash the indictment, alleging, *inter alia,* that count I

2. The indictment reads as follows:
The Grand Jury Charges:
*Count One*
That from on or about August 1, 1977, and continuing thereafter up to and including June 21, 1979, within the the Eastern District of Michigan, Southern Division and elsewhere, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully, combine, conspire, confederate, and agree together with various other persons whose names are both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess with intent to distribute, and to distribute various quantities of cocaine, a Schedule II, Narcotic Drug Controlled Substance, contrary to the provisions of Section 841(a)(1), of Title 21, United States Code; all in violation of Section 846, Title 21 United States Code.
It was part of said unlawful conspiracy that ANTHONY PICCOLO, defendant herein, and various co-conspirators would possess with intent to distribute and distribute said narcotic drug controlled substance (cocaine) within the Eastern District of Michigan, Southern Division, or would aid and abet each other in the distribution of said narcotic drug controlled substance (cocaine) within the Eastern District of Michigan and elsewhere;
In furtherance of said unlawful conspiracy, and to effect the objectives thereof, the defendant and various co-conspirators named herein, committed the following overt acts:
*OVERT ACTS*
1. On February 15, 1979, ANTHONY PICCOLO, defendant herein, met with A. Jerome

Allen and Ernest Marcangello at Piccolo's residence located at 19710 Shady Lane, St. Clair Shores, Michigan.
2. On or about February 15, 1979, A. Jerome Allen and Ernest Eugene Marcangello travelled together to the Hyatt Regency Hotel, Fairlane Town Center, Dearborn, Michigan.
3. On or about February 15, 1979, Ernest Eugene Marcangello distributed approximately 108 grams of cocaine at the Hyatt Regency Hotel, Fairlane Town Center, Dearborn, Michigan.
All in violation of Section 846, Title 21, United States Code.
*Count Two*
That on or about February 15, 1979, in the Eastern District of Michigan, Southern Division, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute approximately 108 grams of cocaine, a Schedule II, Narcotic Drug Controlled Substance; in violation of Section 841(a)(1), Title 21, United States Code.
*Count Three*
That on or about February 15, 1979, in the Eastern District of Michigan, Southern Division, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully distribute approximately 108 grams of cocaine, a Schedule II, Narcotic Drug Controlled Substance; in violation of Section 841(a)(1), Title 21, United States Code.
THIS IS A TRUE BILL

was not specific enough in detail to be upheld. In failing to adequately specify the nature, scope and goal of the conspiracy, defendant claimed that three interests were ignored. First, defendant could not prepare for trial. Second, the indictment did not adequately protect him from double jeopardy. Third, the indictment did not serve its function as a check against usurpation of the protection afforded by the grand jury or upon the grand jury itself. Defendant contends further that the conspiracy count did not indicate that the grand jury had considered each element of the offense with respect to the defendant and, moreover, it did not cabin the prosecutor's theory at trial.

The defendant also claimed the second and third counts of the indictment were multiplicitous and moved for a bill of particulars.

The court rejected all the defendant's motions, stating that the indictment was specific, not multiplicious, and that a bill of particulars was not necessary because most of the evidence had apparently already been given to the defense.

At the opening of the trial, the defense made a motion *in limine* challenging the admission of co-conspirators' statements. The court held that it would admit the statements and determine at the close of evidence whether our test in *United States v. Enright*, 579 F.2d 980 (6th Cir.1978) had been met. At the close of the evidence, the court ruled that the government had met its burden under *Enright*, and that the statements were thus properly admitted. At this point, the defense made a motion to dismiss which included his claim that the conspiracy count could not stand because there was no specificity in the charge and thus no evidence to support it.

The jury found the defendant guilty on all three counts.

## II. The Conspiracy Count

The pervasive theme running through defendant's claims below and before this Court concern the vagueness of the conspiracy alleged. In short, the defendant claims that, from the outset of the trial to the verdict, there was an absence of specificity on the issue of exactly which conspiracy Mr. Piccolo allegedly joined: the indictment was not specific; the court rejected his request for a bill of particulars; in ruling upon the defendant's motion *in limine*, the court failed to specify what conspiracy the defendant joined and failed to make specific findings as to whether the statements offered were in furtherance of the yet unstated goal or purpose of that conspiracy. Moreover, the government's opening and closing arguments did not clarify the vagueness but, rather, pronounced general principles concerning a conspiracy to sell narcotics. The government developed the facts concerning the sale at the Hyatt and the "pick-up" at Piccolo's home but did not develop evidence that established Piccolo's agreement with Allen or Marcangello to sell narcotics to the agents. While it is clear that there is evidence that there was some agreement to sell narcotics, the defendant argues that more specificity is needed for the conviction to stand.

The government on appeal argues that there was no error in the lower court's management of the conspiracy count and that the indictment was sufficient. In sum, it argues that the jury and the defendant had all the specifics each needed with respect to the conspiracy count to effectively carry out their tasks. We disagree.

■ The purpose of requiring specificity in the indictment was discussed by the Supreme Court in *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The court noted three major factors to be considered in determining whether an indictment is sufficient. First, the indictment should be tested in light of its notice function. It is essential that the charging paper " 'sufficiently apprises the defendant of what he must be prepared to meet.' " 369 U.S. at 763, 82 S.Ct. at 1046. Second, the indictment must be of sufficient specificity to protect the defendant from double jeopardy. Finally, the indictment serves both as a check on the grand jury and as a link between the grand jury's considera-

tions and the prosecutor's case at trial. As the court noted:

> A grand jury, in order to make that ultimate determination, must necessarily determine what the question under inquiry was. To allow a prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

369 U.S. at 770, 82 S.Ct. at 1050. (citations omitted).

We have recognized the importance of this third function of the indictment in *United States v. Dickerson*, 337 F.2d 343, 346–47 (6th Cir.1964) and *U.S. v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978). The Second Circuit, in *United States v. Silverman*, 430 F.2d 106 (2nd Cir.1970), noted that an element of this third function is to prevent the "prosecutor from modifying the theory and the evidence upon which the indictment is based." 430 F.2d at 110, *citing:* 8 *J. Moore*, FEDERAL PRACTICE ¶ 7.05[3] (2d. Ed.).

In *Russell*, the court characterized the defendants' dilemma as follows:

> Far from informing Price of the nature of the accusation against him, the indictment instead left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.

369 U.S. at 768, 82 S.Ct. 1049.

■ Similarly, the first count of the indictment here, while satisfying the double jeopardy function[3] and, along with the information passed by the prosecution to the

defense, the notice function, is not specific enough to cabin the prosecutor and prevent him or her from "roaming" at large. Our doubts about the specificity of the conspiracy count are heightened by the subsequent events at trial. The dangers that the Supreme Court warned against in *Russell* appear in this case in both the admission of the co-conspirator's testimony and in charging the jury.

## A. The Co-conspirator's statements

■ Federal Rule of Evidence 801(d)(2)(E) permits the introduction of hearsay testimony of co-conspirators.[4] In *United States v. Vinson*, 606 F.2d 149 (6th Cir.1979), we recognized that a trial judge must have considerable discretion to control the mode and order of proof at trial. Thus, we held that, in determining whether or not to admit the hearsay, the judge need not make a ruling prior to the admission of the evidence. Rather, the judge may admit the evidence subject to a later determination that it is admissible. 606 F.2d at 153. That determination is to be made according to our holding in *United States v. Enright*, 579 F.2d 980 (6th Cir.1970), which requires that the government show by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant against whom the hearsay is admitted is a member of that conspiracy, and (3) the hearsay statement was made in furtherance of the conspiracy. *Id.* at 986. *Accord, Vinson*, 606 F.2d at 152.

■ We find no error in this case with the trial judge admitting the statements in evidence and later ruling on their admissibility. *Vinson* clearly sanctions such procedures. We have doubts, however, about the lack of specificity in the judge's ruling on the *Enright* factors. These doubts are ac-

---

3. We are not troubled by the double jeopardy problems here because the *amount* of narcotics, the dates and the location of the sale are in the indictment. It is not which sale or whether there was an illicit agreement that is unclear, rather we find the failure to adequately characterize the extent of the conspiracy and the factors that tie Piccolo to that conspiracy of concern.

4. Federal Rule 801(d)(2)(E) provides that:
 ... (d) *Statements which are not hearsay:* A statement is not hearsay if—....
 (2) *Admission by party-opponent.* The statement is offered by a party and is ...
 (E) A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

centuated by the lack of specificity in the indictment and the continued unavailing protestations of the defense counsel to that effect.

Before this Court, the defendant argues that four statements admitted should have been excluded. They are (1) Finnigan's testimony that Marcangello and Allen stated that they had come straight from the source, (2) Rassey's testimony to the same effect, (3) Allen's testimony that Marcangello told him that he had to get the cocaine from "Pic" and (4) the testimony by Rassey that a tape recorded conversation had a reference to "Pic".

 The defendant contends (1) that there is insufficient evidence to link him with any conspiracy such that these statements should be admissible, (2) that the remarks were not in furtherance of the conspiracy, but were "mere conversation" and (3) that even if he joined the conspiracy, he did not do so until after the conversation.

We can dispose of the third objection without delay. In *United States v. Cassity,* 631 F.2d 461 (6th Cir.1980), this Court made clear that when an ongoing conspiracy is established, the statements of the co-conspirators made in furtherance of that conspiracy and made prior to the defendant's joining may be admissible against him at trial.[5]

With respect to the sufficiency of the evidence to support the judge's determination below, we cannot agree with the defendant that there is not a preponderance of the evidence for the three prongs of the *Enright* test. While we share the defendant's reservations that the vagueness of the indictment and of the judge's findings on the *Enright* test shed some doubt on the conclusions reached, we cannot say that the admission was error.

There seems to have been some confusion at trial as to whether the *Vinson* and *Enright* cases allow the statements offered to be used in determining whether there is a preponderance of evidence to show the defendant belonged to the conspiracy. *Vinson* permits the judge to take the statements offered as evidence in making the *Enright* determinations. 606 F.2d at 153. With that in mind, we can review the evidence in this case.

The evidence establishes that there was a conspiracy between Allen and Marcangello to sell cocaine to agents Finnigan and Rassey. The central question here, however, is whether there exists a preponderance of the evidence to establish that Piccolo entered into the illicit agreement. It is only upon that finding that the *Enright* test is met.

The government urges that such a preponderance is made out. Allen and Marcangello were to make the sale of cocaine on the 15th. That evening, Marcangello told Allen he did not have the cocaine, but would have to get it from "Pic". Furthermore, Allen and Marcangello travelled to Piccolo's house. Although Allen did not see the actual transfer of drugs, upon leaving the house Marcangello stated he had them. In the hotel, Allen and Marcangello stated that they had come straight from the source. They said that their source could supply ample amounts of cocaine in any future deal. In addition, there is some evidence that Piccolo had been involved in other drug transactions.

While the evidence does not expressly warrant the belief that Piccolo adopted the plan or conspiracy's goal, we think that the evidence is enough to meet the preponderance test. Given the nature of the transaction and the amount of drugs involved, we do not find it clearly erroneous to infer knowledge and acquiescence in the plan by Piccolo.

---

**5.** This is, of course, not to diminish the stringent requirements that the statements must be otherwise admissible and must meet the *Enright* test.

Moreover the cases relied upon by the defendant, *United States v. Smith,* 578 F.2d 1227 (8th

Cir.1978) and *United States v. Killian,* 524 F.2d 1268 (5th Cir.1975) are simply not relevant here. Both those cases deal with admissions against the defendant that are made by co-conspirators *after* termination of the conspiracy.

Yet, the defendant urges that the remarks made by Marcangello that they had come straight from the source, and that he had to get the "cocaine from 'Pic'" do not satisfy the third prong of the *Enright* test—that they be in furtherance of the conspiracy. While we think that these remarks clearly do fall within that area, the dangers inherent in the trial judge's failure to make specific findings on this point become clear.

In *United States v. Eubanks,* 591 F.2d 513 (9th Cir.1979), the Ninth Circuit addressed the scope of the "in furtherance requirement." While not all statements made by co-conspirators are in furtherance of the conspiracy, those that "further the common objectives of the conspiracy" are admissible.[6]

◼ The defendant's argument that the hearsay declarations involved in this case are mere conversation must fail. The hotel room statement that Allen and Marcangello had come straight from the source were made in response to a statement by Finnigan that he was concerned about the quality of the narcotics. It was intended, no doubt, to allay Finnigan's fear that the cocaine had been diluted. Moreover, the statement to Allen by Marcangello that he would get the cocaine from "Pic", could

have been to allay Allen's fear that Marcangello would not deliver. Statements made to give confidence to those involved in the transaction may be in furtherance of the conspiracy. *United States v. McGuire,* 608 F.2d 1028, 1032–33 (5th Cir.1979). We think that the remarks here clearly fall within that category.

◼ That is not to say that there is no confusion as to which conspiracy the remarks furthered. The admission of the evidence without specific findings as to exactly which conspiracy the remarks furthered, gives rise to substantial dangers. These dangers were made evident in *United States v. Fielding,* 630 F.2d 1357 (9th Cir. 1980). There, the trial judge admitted statements that were clearly made to induce further drug sales. The indictment, however, was for sales within a particular period. The Court of Appeals found clear error in admitting the evidence because the statements were made in furtherance of a new conspiracy. The common objectives of the conspiracy for which the defendant was indicted were not furthered by those remarks. Trial judges must make clear what they find to be the objectives of the conspiracy established by a preponderance of the evidence under the *Enright* test.[7] Only

6. In that case, a conspirator's report to his commonlaw wife about what had transpired was deemed not in furtherance because it was not made to induce her continued cooperation. Similarly, in *United States v. Castillo,* 615 F.2d 878 (9th Cir.1980), the court found a statement made by one co-conspirator, to a trusted friend, that he was going to kill someone was not in furtherance, but was mere casual conversation.

7. Clarity is needed because of the ruling in *Cassity* which allows the hearsay evidence to be used in considering whether it is admissible. While we do not doubt the wisdom of the rule, we note that it should be carefully employed. Other circuits, it should be noted, adhere to a rule that the evidence cannot be used and that the *Enright* test must be met with independent evidence. *See United States v. James,* 590 F.2d 575 (5th Cir.1979); *United States v. Bell,* 573 F.2d 1040 (8th Cir.1978). While not subscribing to that view, we think that Judge Coffin's caution in *United States v. Martorano,* 557 F.2d 1, 12 (1st Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978) that such evidence ought to be given little weight by the

court in determining whether a proper foundation for admission has been established is good sense. Moreover, the hearsay evidence ought not to be the *only* evidence to consider in applying the *Enright* standard. *See Martorano, supra.* Second, since we have allowed a preliminary showing to be postponed under *Vinson,* the "in furtherance" requirement needs to be carefully applied so as to not make *Enright* a meaningless rule. To carefully apply that standard, close examination of the specific statements and the specific allegations of conspiracy are needed.

Here, we think there is independent evidence that tends to meet the preponderance requirement for the finding that Piccolo was a member of the conspiracy. The amount of the narcotics, the trip to his home, the previous dealings with Allen and statements made to him by Piccolo all provide some basis, independent of the hearsay statements, upon which to premise a conspiracy between Piccolo and the others. The hearsay statements provide additional support. Moreover, see footnote 8 concerning the "in furtherance" requirement in this case.

then can the in furtherance requirement effectively be followed. This is especially so in a case, such as this, where the indictment is vague and the defendant raises an objection to the inchoate nature of the conspiracy charged.[8]

### B. The Jury Charge

The most damaging effect of the failure to fully articulate the theory of conspiracy upon which the government was proceeding came at the jury instruction stage. The judge gave merely a general charge upon the law of conspiracy [see Appendix] without relating the law to the facts of the case.

■ While the instructions are correct legal principles, they do not adequately inform the jury as to their task. A judge has a duty to give instructions that are meaningful and translated, not in terms of mere abstract law, but into facts of the particular case. *Choy v. Bouchelle,* 436 F.2d 319 (3rd Cir.1970); *Mitchell v. United States,* 394 F.2d 767 (D.C.Cir.1968); *Marshall v. Isthmian Lines,* 334 F.2d 131 (5th Cir.1964).

Failure to meet that duty is particularly a problem when, as here, the conspiracy theory is *never* made clear to the jury in terms of specific facts of the case. In the indictment, as we have seen, the prosecution did not make clear the limits of the agreement or the objective of the conspiracy. As the appellant phrased it, the indictment "relegates the grand jury function to the writing of a blank check which the prosecutor can fill in at trial with facts that may not have formed the basis for the indictment." Brief in Support of Motion to Quash Indictment

at p. 3. In both the closing and opening arguments, the prosecution failed to link the elements of the charged offense to specific and identifiable facts in the case. The trial judge bears a special responsibility to make clear which facts the jury must find to sustain a conviction. Here, the jury charge was insufficient.

It is beyond dispute that the essential ingredient in the crime of conspiracy is agreement. While that agreement need not be shown by formal or direct evidence, the jury must specifically consider what agreement underlies the crime alleged. Nowhere in the proceedings is this made clear to the jury. The task of the judge, in his or her charge, is to adequately guide the jury. The ambiguity in the indictment and subsequent argument should have been corrected at the instruction stage.[9] Without an instruction that sets out specifically what acts would constitute Piccolo's agreement in the conspiracy count, the jury could not adequately consider the conspiracy count. The jury found that Piccolo sold narcotics to Marcangello. They also may have found that Marcangello and Allen were involved in a conspiracy to sell narcotics. What they needed to consider and find is that Piccolo shared in that conspiracy.

The instructions given merely stated that willful participation is needed. The jury may merely have found that Piccolo willfully sold the narcotics, and concluded that this was enough to make him part of the conspiracy. Yet, that is not enough for agreement, they must find that he willfully

---

**8.** Here, we do not find that Piccolo was harmed by the failure to make clear the findings. First, unlike *Fielding,* there is no problem that the remarks were made in furtherance of a conspiracy for future sales. The remarks involved here all relate to and further the particular sale that occurred at the Hyatt. The vagueness creates a problem not for the furtherance requirement but for the issues as to whether Piccolo joined the illicit agreement and what the limits of that agreement were. There is little doubt that whatever the agreement was, it included the sale to the agents.

**9.** It is interesting to note that even the judge in this case was not clear on exactly which relationship the government was attempting to prove between the alleged conspirators. In the discussion concerning a proposed principal/agent charge, the judge stated, "my concern is that if we accept the government's testimony and/or evidence in its best light, that the relationship between Marcangello and Piccolo has been ill defined and the question I asked myself and present to you and Mr. Penta is whether the inclusion of an instruction relating to the principle agency and constructive possession would cause a confusion to the jury ..." Tr. III, 84.

acted with the intent to further the conspiracy.[10]

Where, as here, there is substantial evidence to support a conviction on the substantive count, there is a great danger in allowing a conspiracy count to go to the jury without specific instructions. The admonition in *Russell v. United States, supra,* that a specific indictment is needed to check the prosecutor and provide insurance against the jury finding the defendant guilty on a charge the grand jury never considered is all the more poignant when nowhere in the trial is the charge made clear. We cannot allow the conspiracy conviction to stand.[11]

 The government urges that Fed. Rule Civ.Proc. 51 prohibits this Court from considering the charge to the jury because the defendant did not raise an objection to the specificity of the instructions below.[12] We cannot agree. While at first it seems that Rule 51 bars any review when there is no objection at trial, this Court, as well as nearly all the circuits, has recognized that there is a narrow exception to the general

rule where an objection would have been a mere "formality" under the circumstances, or where the error was "obvious and prejudicial". See *Batesole v. Stratford,* 505 F.2d 804 (6th Cir.1974) (collecting cases). This Court has recognized that the underlying purpose of the rule is to prevent needless retrials by affording the trial judge a chance to think over the instructions in light of potential objections on appeal. *Moore v. Stephens,* 271 F.2d 119 (6th Cir. 1959).

Here, the defense raised the claim that the whole conspiracy count was vague from the onset of the proceedings. He raised it numerous times and found the court unreceptive. When he requested a principal/agent instruction, the judge stated he thought that it was not a good instruction because it might further confuse an already confusing set of allegations. At the close of evidence, under the guise of a motion to dismiss, defendant again raised the claim that the conspiracy alleged was vague. We cannot say that the defense was lax in bringing the problem to the court's attention.[13]

---

**10.** The dissent claims that the "charge" did make clear that, to find Piccolo guilty, the jury must find that he willfully participated in the conspiracy (p. 3) and thus our holding that the charge was not specific must fail. This simply misses the point. We recognize that the jury was instructed that they must find some willful participation. On the instructions given, the jury may have found the sale willful, but have not considered whether Piccolo knew of or intended to participate in the conspiracy. Yet, the conspiracy count is not proven merely by showing the underlying offense, one must show willful and *intentional furthering of a common and accepted goal.*

**11.** The dissent contends that our holding is internally inconsistent because we, on the one hand, hold that the court did not err in admitting the statements of the co-conspirators and, on the other, that the conviction must be reversed because the conspiracy was never made clear. At 1176. This claim misses the distinction between the standards to be applied in each situation. As noted above, the co-conspirator's statements can be admitted on a mere *preponderance* of the evidence including the statements to be admitted. Yet, the jury must find, *beyond a reasonable doubt,* that each and every element of the offense is present. It is not at all inconsistent to hold that while there is a preponderance of the evidence to support

the admission of co-conspirator statements, the jury was not properly instructed so as to be able to adequately consider each and every element of the offense, or that the conspiracy alleged may not have been the conspiracy the jury found.

**12.** Rule 51 provides in relevant part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Civ.P. 51.

**13.** Alternatively, an appellate court may reverse for plain error in an instruction, even when not objected to, to prevent a miscarriage of justice. See 9 *Wright & Miller* Federal Practice and Procedure § 2558 (1971) collecting cases.

When the factual issues are complex, it is plain error not to instruct the jury with specific facts from the case at hand. *Choy v. Bouchelle, supra.* cf. *United States v. Holley,* 502 F.2d 273, 275–76 (4th Cir.1974) (law must be applied within the context of the facts as developed; instructions cannot have "abstract quality divorced from the concrete facts of the case"); *Mitchell v. United States,* 394 F.2d 767, 770

## II. Counts II and III

■ The defendant raises several objections to his conviction and sentence on Counts II and III of the indictment.[14] The most significant objection is his claim that the two counts are multiplicious. The government argues that since the trial judge gave Piccolo a *single* five year sentence on the two counts, the defendant cannot complain. It cites our holdings in *United States v. Stevens,* 521 F.2d 334 (6th Cir.1975) and *United States v. Woods,* 568 F.2d 509 (6th Cir.), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978) where we held that a defendant cannot be sentenced on both possession with intent to distribute and distribution. In those cases we merely vacated one of two concurrent sentences on multiplicious counts. The Government contends that here the single sentence gives the defendant what he would be entitled to were he to win on appeal.

The government's reasoning cannot stand. While it is clear that the trial judge granted a single sentence on counts II and III, it is precisely for that reason that *Woods* and *Stevens* do not apply with respect to the issue of remedy. Here, there is no evidence that the trial judge considered five years on one of counts II and III to be adequate and proper sentencing. The judge may have considered five years ade-

quate for *both* and have intended the sentence to cover *both* counts. Thus, the case must be returned for resentencing in light of the fact that the defendant cannot be sentenced on both counts II and III.

We find the defendant's other objections with regard to counts II and III without merit.

In sum, because of the pervasive lack of a specific theory of conspiracy, the vague indictment on the conspiracy count, and the failure of the trial judge to adequately instruct the jury by tying the abstract legal instructions to the specific facts of the case, we reverse the defendant's conviction on count I. We remand the case for resentencing in light of the fact that the defendant cannot be sentenced on both counts II and III.

It is so ORDERED.

## APPENDIX

The judge charged the jury as follows on the conspiracy count:

Title 21 Section 846, United States Code reads as follows:

"Conspiracy: Any person who conspires to commit an offense defined in this subchapter, the commission of which was the subject of the conspiracy is in violation of Title 21 United States Code Section 846."

---

(D.C.Cir.1968) (the jury charge "should be drawn with reference to the particular facts of the case on trial").

**14.** The government argues that on appeal we should not consider the defendant's contentions with regard to the conspiracy count, because we should exercise our discretion under the "concurrent sentence doctrine." We cannot do so. While the Supreme Court indicated that the rule may have some continued validity as a rule of judicial convenience, *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380; *Ethridge v. United States,* 494 F.2d 351, *cert. denied,* 419 U.S. 1025, 95 S.Ct. 504, 42 L.Ed.2d 300 (1974); *United States v. Burkhart,* 529 F.2d 168 (6th Cir.1976), it is simply not applicable here. As is admitted by the government, that rule is used to avoid the issues on review of one count of the indictment when the court will leave the concurrent sentence on the remaining count intact and, as we noted in *Ethridge* and *Burkhart,* there is "no basis under

which our resolution of this appeal could have any effect upon the appellant's imprisonment or subsequent parole, or for that matter enjoyment of life." *Burkhart,* 529 F.2d at 169. Moreover, there is the obvious requirement that there *be* concurrent sentences. We need go no further than realize that this latter requirement is not satisfied here. Piccolo received a five-year sentence on count I. Though the government urges that the single five-year sentence on counts II and III is a "concurrent sentence" for the purposes of the doctrine, that is not the case. Piccolo cannot be sentenced on both counts II and III, and as we note below, we cannot determine whether the five-year single sentence is an aggregate sentence for the two counts. That being the case, we cannot hold that there is a legitimate concurrent sentence that can serve as a prerequisite for an exercise of discretion under the concurrent sentence rule.

A conspiracy is a combination of two or more persons by concerted action to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. So, a conspiracy is a kind of partnership in criminal purposes in which each member becomes the agent of every other member. The gist of the offense is a combination or agreement to disregard the law.

Mere similarity of conduct among various persons and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. However, the evidence in the case need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be or the details thereof or the means by which the object or purpose was to be accomplished. What the evidence in the case must show beyond a reasonable doubt in order to establish that a conspiracy existed is that the members in some way or manner or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

The evidence in the case need not establish that all the means or methods set forth in the indictment were agreed upon to carry out the alleged conspiracy, nor that all means or methods which were agreed upon were actually used or put into operations, nor that all the persons charged to have been members of the alleged conspiracy were such.

What the evidence in the case must establish beyond a reasonable doubt is that the alleged conspiracy was knowingly formed and that one or more of the means or methods described in the indictment were agreed upon to be used in an effort to effect or accomplish some object or purpose of the conspiracy as charged in the indictment and that two or more persons, including one or more of the accused, were knowingly members of the conspiracy as charged in the indictment.

One may become a member of a conspiracy without full knowledge of all the details of the conspiracy. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a coconspirator.

Before the jury may find that a defendant or any other person has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that the defendant or other persons who is claimed to have been a member wilfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy.

To act or participate wilfully means to act or participate voluntarily and intentionally and with specific intent to do something that the law forbids or with specific intent to fail to do something the law requires to be done. That is to say, to act or to participate with the bad purpose either to disobey or to disregard the law. So, if a defendant or any other person with understanding of the unlawful character of a plan knowingly encourages, advises or assists for the purpose of furthering the undertaking or scheme, he thereby becomes a wilful participant—a conspirator.

One who fully joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators of the conspiracy.

In determining whether a conspiracy existed, the jury should consider the actions and declarations of all of the alleged participants; however, in determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members.

In your consideration of the evidence in the case as to the offense of the conspiracy charged, you should first determine wheth-

er or not the conspiracy existed as alleged in the indictment. If you conclude that the conspiracy did exist, you should next determine whether or not the accused wilfully became a member of the conspiracy. If it appears beyond a reasonable doubt from the evidence in the case that the conspiracy alleged in the indictment was wilfully formed and that the defendant wilfully became a member of the conspiracy either at its inception or afterwards, and that thereafter one or more of the overt acts charged in furtherance of some object or purpose of the conspiracy, then there may be a conviction even though the conspirators may not have succeeded in accomplishing their common object or purpose and in fact may have failed in so doing.

The extent of any defendant's participation, moreover, is not determinative of his guilt or innocence. A defendant may be convicted as a conspirator even though he may have played only a minor part in the conspiracy.

An overt act is any act knowingly committed by one of the conspirators in an effort to effect or accomplish some object or purpose of the conspiracy. The overt act need not be criminal in nature, if considered separately and apart of the conspiracy. It may be as innocent as the act of a man who walks across the street or drives an automobile or uses a telephone. It must, however, be an act which follows and tends toward accomplishment of the plan or scheme and must be knowingly done in furtherance of some object or purpose of the conspiracy charged in the indictment.

Four essential elements are required to be proved to establish the offense of conspiracy charged in the indictment:

"First: that the conspiracy described in the indictment was wilfully formed and was existing at or about the time alleged;

Second: that the accused wilfully became a member of the conspiracy;

Third: that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and,

Fourth: that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

Now, if you, the jury, should find beyond a reasonable doubt from the evidence in the case that the existence of the conspiracy charged in the indictment has been proven and that during the existence of the conspiracy, one of the overt acts alleged was knowingly done by one of the conspirators in furtherance of some object or purpose of the conspiracy, then proof of the conspiracy offense charged is complete and it is complete as to every person found by the jury to have been wilfully a member of the conspiracy at the time the overt act was committed regardless of which of the conspirators did the overt act.

BAILEY BROWN, Senior Circuit Judge, dissenting.

I respectfully dissent as to the reversal of the conviction of conspiracy and concur that the case must be remanded for resentencing as to the substantive counts.

I

The panel's opinion does not make clear whether it holds that the conspiracy count of the indictment is fatally defective and that the conviction is reversed on that ground. The opinion points out that an indictment must give adequate notice to the defendant, must protect the defendant from double jeopardy, and must serve as a "check on the grand jury and as a link between the grand jury's consideration and the prosecutor's case at trial." The opinion then states that the conspiracy count passes muster as to the first two requirements but fails as to the third, stating that it

[I]s not specific enough to cabin the prosecutor and prevent him or her from "roaming" at large. Our doubts about the specificity of the conspiracy count are heightened by the subsequent events at trial.

At 1167.

I say that the opinion is not clear whether it holds that the conspiracy count of the

indictment is fatally defective because, after making the above statement, it seems to hold that such defect could have been cured if the district court had tailored the instructions to the evidence and had specifically described the conspiracy that must be proven to find the defendant guilty. The opinion even seems to indicate that the indictment might have been effectively cured if the prosecutor had been more specific in his argument to the jury.

In any event, it seems to me that the indictment is sufficiently specific to make sure that the defendant is actually tried for the offense that the grand jury had in mind when it indicted. All of the overt acts alleged clearly zero in on the claimed conspiracy under which defendant Piccolo, at his home, delivered a substantial amount of cocaine to Marcangello who, with Allen, left the home and delivered it to the undercover agents. The overt acts may be relied upon in so construing the indictment. *United States v. Pheaster,* 544 F.2d 353, 362 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Heinze,* 361 F.Supp. 46, 50 (D.Del. 1973).

The opinion also seems to hold, as a separate proposition, that the conviction must be reversed because the district court did not tailor the charge to the facts in evidence even though there was no objection to the charge.[1] It seems to me that the conspiracy alleged and proven here was not so complicated as to confuse the jury and to make more specific instructions imperative. The conspiracy charged and proven was as above briefly set out although there was other evidence introduced to show that Piccolo likely had a supply of cocaine and where he obtained it.

The opinion also states that the charge is defective in that it does not make clear that, for a conviction, it was necessary to prove that Piccolo knowingly participated in the conspiracy. The opinion states:

Without an instruction that sets out specifically what acts would constitute Piccolo's agreement in the conspiracy count [sic], the jury could not adequately consider the conspiracy count. The jury found that Piccolo sold narcotics to Marcangello. They also may have found that Marcangello and Allen were involved in a conspiracy to sell narcotics. What they needed to consider and find is that Piccolo shared in that conspiracy.

At 1170. On the contrary, the charge did make clear that, to find Piccolo guilty, the jury must find that he wilfully participated in the conspiracy. The charge included the following:

In your consideration of the evidence in the case as to the offense of the conspiracy charged, you should first determine whether or not the conspiracy existed as alleged in the indictment. *If you conclude that the conspiracy did exist, you should next determine whether or not the accused wilfully became a member of the conspiracy. If it appears beyond a reasonable doubt from the evidence in the case that the conspiracy alleged in the indictment was wilfully formed and that the defendant wilfully became a member of the conspiracy either at its inception or afterwards,* and that thereafter one or more of the overt acts charged in furtherance of some object or purpose of the conspiracy, then there may be a conviction even though the conspirators may not have succeeded in accomplishing their common object or purpose and in fact may have failed in so doing.

\*　　\*　　\*　　\*　　\*　　\*

Four essential elements are required to be proved to establish the offense of conspiracy charged in the indictment:

"obvious and prejudicial," citing *Batesole v. Stratford,* 505 F.2d 804 (6th Cir.1974), a civil (diversity) case. The panel opinion does indicate (at 1171 n. 13) that the "plain error" rule could have been relied on alternatively.

---

1. The panel opinion does not actually hold that the failure to object to the charge in this respect is excused under the "plain error" rule, Rule 52(b), Fed.R.Crim.P.; rather, it relies on the proposition that the failure to object would have been a "formality" and the error was

"First: That the conspiracy described in the indictment was wilfully formed and was existing at or about the time alleged;

Second: *That the accused wilfully became a member of the conspiracy;*

Third: That one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and,

Fourth: That such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged. (Emphasis added).

The panel opinion is internally inconsistent. On the one hand, it holds that the district court did not err in allowing into evidence statements of co-conspirators as being in furtherance of the conspiracy and yet holds that the conspiracy as charged in the indictment and as *not* specifically defined in the instructions is so nebulous as to require reversal of the conviction. It seems to me that implicit in this holding that the district court did not err in allowing into evidence, for consideration of the jury, the co-conspirators' statements is the proposition that the conspiracy was sufficiently defined in the indictment to support such a ruling by the district court.

I recognize the validity of the concern where the conspiracy charged and the proof are complicated, but this is not such a case. It might well have been better for Judge Cook in his instructions to have more specifically described the conspiracy charged, in support of which there was sufficient trial evidence, but his failure to do so is not, in my view, reversible error.

Accordingly, I would affirm as to the conspiracy count.

II

With respect to Counts II and III, the possession with intent to distribute and the distribution counts, the district court did not impose a sentence on each count, but instead imposed a single "general sentence" of five years. Such a "general sentence" is not *per se* illegal but general sentences are

adversely criticized and are not preferred. *See* 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 527 at 417 (1969). I suppose the district court so imposed the sentence in an attempt to avoid the problem pointed up by our court in *United States v. Stevens,* 521 F.2d 334 (6th Cir.1975). There, our court held that where a defendant is convicted of possession with intent to distribute and distribution, and the convictions are based only on a possession immediately before transfer and then transfer, while both convictions stand, a sentence may not be imposed under each count, even if made concurrent. Our court remanded only for vacation of one of the sentences. The rationale is that Congress did not intend for punishment to be imposed under each count under such circumstances. Applying this rationale, it appears to me that the sentence here violates the principle established by *Stevens* in that a sentence was imposed on both counts. Accordingly, I believe that, as is the result prescribed by the panel opinion, the cause should be remanded for resentencing.